604 So.2d 52 (1992)
STATE of Louisiana
v.
Christopher THOMAS.
No. 92-KA-109.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 1992.
*54 John Mamoulides, Dist. Atty., 24th Judicial District, Parish of Jefferson, Dorothy Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Ginger Berrigan, Indigent Defender Bd., Gretna, for Thomas.
DUFRESNE, WICKER and GOTHARD, JJ.
DUFRESNE, Judge.
The defendant, Christopher Thomas, was charged with two counts of armed robbery, LSA-R.S. 14:64 and one count of attempted armed robbery, LSA-R.S. 14:27 and 14:64. He pled not guilty and was tried by a jury and found guilty as charged. The district judge sentenced the defendant to thirty years at hard labor, without benefit of parole, probation or suspension on count one, thirty years at hard labor, without benefit of parole, probation or suspension on count two, and twenty years at hard labor on count three, to run consecutively. This appeal followed and the appellant alleges six assignments of error:
1. The evidence was insufficient to establish the defendant, Christopher Thomas, was the perpetrator of these offenses.
2. The evidence was insufficient to prove that an armed robbery occurred in count two.
3. The evidence was insufficient to prove that an attempted armed robbery occurred in count three.
4. The trial court erred in failing to require the State to justify its peremptory challenges of three black jurors.
5. The trial court erred in disallowing evidence regarding (a) the defendant's statements to Sgt. Judith Rice and (b) the hospital records of the defendant containing a statement of the defendant.
6. The sentence imposed was excessive.

FACTS
On July 27, 1990, Elizabeth Reneman; her sister, Debra Richard; and a friend, Brenda Barras, decided to go out and have dinner at Chi-Chi's Mexican Restaurant located near the Oakwood Shopping Mall. They finished dinner at approximately 10:00 p.m. and walked out to the parking lot to get into Elizabeth Reneman's car which was parked in front of the restaurant in the second row. After Mrs. Reneman opened the passenger side, she proceeded around the back of her vehicle. At that point, a black male, subsequently identified as defendant, approached the three ladies brandishing a gun. Debra Richard managed to get into the car, lock the doors, and blow the horn to try to get attention. The perpetrator then shoved Elizabeth Reneman and Brenda Barras to the ground and took their purses while holding a gun to their backs. Not satisfied with the two purses, defendant began banging on the car window in an apparent attempt to get Debra Richard's purse. While defendant banged on the car window, Elizabeth Reneman and Brenda Barras ran into Chi-Chi's *55 announcing that they had just been robbed and that the perpetrator was still outside.
At trial, Elizabeth Reneman testified that because she was so scared, she was unable to get a good look at the subject and therefore, could not give police a description of either the weapon or the suspect other than to say that he was not a large person. Mrs. Reneman identified State Exhibit Number 2 in court as a photograph of the purse she had with her on the night of the incident. In addition, she testified that $50.00 had been taken from it.
The testimony of Brenda Barras basically corroborated that of Elizabeth Reneman set forth above. Mrs. Barras saw the robber's face in profile as he beat on the car window and later told police that he was light skinned, with big eyes, and was not a very big man. According to Brenda Barras, the suspect wore khaki colored shorts and a red tank top. In addition, she described defendant's weapon as a small, shiny gun. Although Mrs. Barras was unable to identify the perpetrator in a photographic lineup shown to her two hours after the incident, she identified defendant in court as the man who took her purse which contained $50.00 cash. In addition, she identified State Exhibit Number 1 in court as a photograph of the purse she had with her on the night of the incident.
Debra Richard gave basically the same account of the incident as the other two victims. Through the windshield of the car, she saw defendant shove her sister and Brenda Barras to the ground; however, when defendant began to bang on the car window, she put her face down in the seat until he left. In the police report she described the person as wearing khaki shorts, a tank top and a white cap. Although she was unable to make a positive identification in the photographic lineup, she identified defendant in court as the man pounding on the car window.
At the time Elizabeth Reneman and Brenda Barras ran into Chi-Chi's announcing the robbery, Jason Brodhead was sitting in the front area of the restaurant waiting for his wife to get off of work. Mr. Brodhead rushed outside and saw a black male run from the second area of cars. The fleeing individual headed toward the Service Road area, carrying something under his arm. Brodhead took up pursuit of this individual who was wearing shorts and a red tank top. At trial, Brodhead testified that he chased defendant for about 150-200 yards and at one point, got within about 15-20 feet of him. During the pursuit, the black man turned around about 5 or 6 times, giving Brodhead the chance to get a profile view of him. As the chase ensued down well lit streets, Brodhead ran directly in front of a car forcing its driver to make an abrupt stop. Eli Stewart, the individual in the car, then joined in the chase. Brodhead got into Stewart's car, but by this time, they had lost sight of the suspect because he ran into a set of apartments. When they were unable to locate the suspect after circling the block several times, they returned to Chi-Chi's to wait for the police to arrive. At trial, Brodhead identified defendant in court as the individual he chased that night, noting as the only difference defendant's haircut.
Sergeant Judith Rice of the Jefferson Parish Sheriff's Office, armed robbery division, responded to the call. Upon arrival, she talked to several people and then got into Mr. Stewart's vehicle so he could show her where the suspect had run. After circling the block several times, Mr. Stewart saw the black man that ran in front of his car carrying purses, enter a blue Chevrolet Camaro and take off. Although Stewart could not identify anyone in the courtroom as the perpetrator, he testified that he had no doubt that the person he saw in the Camaro was the same person that ran in front of his car carrying the purses.
Sergeant Rice, still in Stewart's car, followed the Camaro which was subsequently found to be registered in defendant's name. She then broadcasted a description of the suspect vehicle over the radio asking other units for assistance.
Deputy Melvin Collongues of the Jefferson Parish Sheriff's Office testified that he heard over his radio that an armed suspect was fleeing in a blue Camaro. While sitting *56 at the intersection of Holmes Boulevard and Behrman Highway, Deputy Collongues observed a blue Camaro. The deputy got behind the vehicle, put on his overhead lights and hit the siren in an attempt to stop the vehicle. The person in the Camaro accelerated, but after several blocks, Deputy Collongues managed to get in front of the blue car and block its path. Deputy Collongues exited his vehicle and ordered the suspect to exit. Defendant did not comply with the officer's command but instead rammed his Camaro into the side of the police car. Deputy Collongues ran up to the Camaro, opened the driver's door, and pulled defendant out of the car, causing a purse to fall from the Camaro to the ground. A second purse, belonging to Brenda Barras, was later found on the front driver's seat in the Camaro. By this time, another officer, Deputy Duett, had arrived. A struggle ensued between the deputies and the suspect. When the officers were unable to get the suspect's hands away from in front of him, Deputy Collongues struck the suspect several times in the center of his forehead in an attempt to disarm him. The suspect pulled away from the officers, retrieved his gun, and pointed the weapon at the officers. Deputy Collongues, who already had his weapon drawn, fired a shot at the suspect which struck him in the left front chest. As the officers ran to take cover, the defendant who was still armed with his gun, ran and jumped a fence, at which point the officers lost sight of him.
Deputy Melvin Collongues testified that he did not get a good look at the perpetrator because his main focus was to watch the suspect's hands and weapon. Although he could not identify the man he struggled with, he was certain of the injuries defendant received.
Deputy Duett testified that he got a good look at the suspect during the course of the struggle as the street was well lit and as the head lights of his car were on. Deputy Duett identified defendant in court as the individual with whom he and Deputy Collongues struggled, the only difference being the length of defendant's hair.
Hospitals in the area were notified to be on the look out for an individual with the particular types of wounds defendant had received. Shortly thereafter, the officers were notified that a male with those types of wounds had gone to Charity Hospital to seek medical attention. Once the officers arrived at the hospital, Captain Gorman advised defendant of his rights. Thomas was subsequently arrested and charged with the instant offenses.
Sergeant Judith Rice identified defendant in court as the individual she chased in the Camaro and as the person she later saw at Charity Hospital with an open wound in his forehead and a wound to the left chest, noting as the only difference defendant's haircut.
In addition to the above testimony, Pamela Williams, an expert in forensic sereology, testified that the blood type on the samples that she analyzed that came from Deputy Collongues' arm, the street at the scene, a leaf found at the scene, and the white tee shirt defendant wore at the hospital, was type "A". Although she testified that defendant's blood type is also "A", she admitted that 27% of the black population in this country has type "A" blood.

ASSIGNMENT OF ERROR NO. 1
In the first of defendant's three assignments dealing with sufficiency, he contends that the evidence was insufficient to prove that he was the perpetrator of these offenses, and that the State failed to negate the reasonable probability of misidentification.
Defendant was convicted of two counts of armed robbery and one count of attempted armed robbery. Armed robbery is defined in LSA-R.S. 14:64 as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." State v. Bartley, 564 So.2d 1297 (La.App. 5th Cir.1990).
Encompassed in proving the elements of the offense is the necessity of proving the identity of defendant as the *57 perpetrator. When the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Duvio, 511 So.2d 821 (La.App. 5th Cir.1987); State v. Junior, 542 So.2d 23 (La.App. 5th Cir.1989), writ denied, 546 So.2d 1212 (La.1989).
In the present case, it can be said that the State negated any reasonable probability of misidentification. Although the victims were unable to identify defendant in a photographic lineup conducted two hours after the incident, two of the victims, Brenda Barras and Debra Richard, identified defendant in court as the perpetrator. While Brenda Barras was unable to give a detailed description of the suspect the night of the incident as she was upset, she testified that she was positive the defendant was the perpetrator because "his face brought it all back" despite the fact 14 months elapsed between the incident and the trial.
In addition, other witnesses who participated in the chase of the defendant were able to identify him in court.
Defendant bases this argument about misidentification on several factors, including the victims' inability to select defendant from a photographic lineup, their inability to give police a detailed description of the perpetrator, their limited view of the assailant, and the length of time between the offense and the trial (fourteen months). He also complains that the in-court identifications of defendant by Sergeant Rice, Deputy Duett, and Jason Brodhead were suspect due to their limited view of the assailant, the length of time between the offenses and trial, and the highly suggestive circumstances of an incourt identification. Moreover, he complains that there was a reasonable likelihood of misidentification due to the fact that the clothes allegedly worn by defendant, khaki shorts and a red tank top, were never found.
The weight to be given a witness's testimony is an issue which must be determined by the finder of fact. Testimony concerning partial or tentative identifications or statements that the offender "resembles" the accused are admissible into evidence. The doubtful or inconclusive nature of the identification is a matter which goes to the weight rather than the admissibility of the evidence. State v. Wright, 410 So.2d 1092 (La.1982).
In the present case, the jury obviously chose to believe the testimony of the state witnesses regarding the identification of defendant as the perpetrator. It is not the function of an appellate court to evaluate the credibility of the witnesses and overturn the trial court on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Duvio, supra.
Based on the previously discussed testimony, it can be said that the State negated any reasonable probability of misidentification. Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment, defendant raises another issue relating to sufficiency. He specifically argues that even assuming he was the perpetrator, the State failed to prove that he took Brenda Barras' purse by force or intimidation as the testimony showed that "the purse was simply lifted off her shoulder."
The State proved all the elements of the offense of armed robbery insofar as it relates to the victim Brenda Barras. Through the testimony of the victims, the State proved that defendant, while holding a gun, grabbed Brenda Barras' purse containing $50.00 from her shoulder and then grabbed her by the hair and pushed her to the ground.
Viewing the evidence in the light most favorable to the prosecution, sufficient evidence was produced for a rational trier of fact to conclude beyond a reasonable doubt that defendant committed the armed robbery of Brenda Barras. Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
In this final assignment dealing with sufficiency, defendant contends that *58 the State failed to prove that the perpetrator had the specific intent to rob Debra Richard, the victim who managed to lock herself in the car before defendant grabbed her or her purse. According to defendant, "it is unknown whether the perpetrator was attempting to rob her or whether he was attempting to silence her blowing of the car horn."
An "attempt" is defined in LSA-R.S. 14:27 as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
Thus, looking at the definition of an "attempt", the prosecution's burden is to prove specific intent and the commission of an overt act tending toward accomplishing the offense. State v. Hunter, 454 So.2d 131 (La.App. 2nd Cir.1984), writ denied, 456 So.2d 1018 (La.1984).
Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. L.S.A. 14:10(1).
As it is a state of mind, specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2nd Cir.1989), writ denied, 544 So.2d 398 (La.1989).
The evidence produced at trial was more than sufficient to sustain the defendant's conviction for attempted armed robbery of Debra Richard. The defendant was armed with a gun and had just taken the purses of the other two women outside the car. Accordingly, the jury as the trier of fact was correct in their determination that the defendant intended to rob Debra Richard. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
In the present case, the State peremptorily challenged three black jurors, Patricia Frank, Verna Collor and Barbara Celestine. After the State exercised its second peremptory challenge, defense counsel lodged an objection pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), alleging that the State was systematically excluding black jurors. Following defendant's objection to the State's use of its third peremptory challenge on a black juror, the court concluded that there was no systematic exclusion of blacks from the jury.
Prior to discussing the law on this issue, it should be noted that defendant is black and the three victims are white. In addition, two black jurors had already been selected prior to the time that the State used any of its peremptory challenges.
It is well established that use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, supra. In Louisiana law, this rule is set forth in LSA-C.Cr.P. Article 795.
In Batson v. Kentucky, supra, the United States Supreme Court held that in order to prove purposeful discrimination in the selection of the petit jury, the defendant must show he is a member of a cognizable racial group; that the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race; and that the facts and other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude the veniremen from the petit jury on account of their race. The combination of these factors establish a prima facie case of purposeful discrimination.
*59 State v. Collier, 553 So.2d 815 (La.1989); State v. Gilmore, 522 So.2d 658 (La.App. 5th Cir.1988).
However, the United States Supreme Court, in Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), modified the standard to be used in determining purposeful discrimination in the selection of the jury. In Powers, the court announced that defendant need no longer be a member of the cognizable racial group which has been excluded.
Thus, it now appears that the provisions of State v. Collier, supra, and other Louisiana jurisprudence resulting from Batson, which require that defendant be a member of a cognizable racial group and that members of that group be systematically excluded, are no longer valid. Nonetheless, it appears that such facts would be relevant to establish a prima facie showing.
In the present case, the State had already accepted two black jurors when the prosecutor peremptorily challenged a second black juror, Verna Collor. After defense counsel lodged a Batson objection, the prosecutor explained that she challenged Ms. Collor because "she didn't seem to be paying attention. She would have to participate in this trial." Shortly thereafter, the prosecutor peremptorily challenged a third black juror, Barbara Celestine, to which challenge defense counsel noted an objection.
In the present case, the trial judge did not abuse his discretion in concluding that there was no systematic exclusion of blacks. At the time the State exercised its first peremptory challenge on Patricia Frank, a black lady, the State had already accepted two black jurors to serve on the jury. Moreover, the State excused two of the black jurors due to inattentiveness. Given these circumstances there is nothing to indicate that the jury selection process was done in a discriminatory fashion. Thus, the defendant has not met his burden of proving purposeful discrimination.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 5
In this assignment the defendant urges that the trial court erred in disallowing evidence regarding (a) the defendant's statements to Sgt. Judith Rice and (b) the hospital records of the defendant containing a statement of the defendant.

a) Defendant's statement to Sergeant Rice at the hospital.

Several hours after the instant offenses, the defendant went to Charity Hospital for treatment of various injuries. The hospital, which had been alerted to be on the look out for an individual with these particular injuries, notified the police. Sergeant Judith Rice went to Charity Hospital for further investigation. After Captain Gorman advised defendant of his rights, they questioned defendant regarding his injuries. When the defense sought to elicit testimony about what defendant told her at the hospital, the State objected based on inadmissible hearsay. At a hearing conducted outside the presence of the jury, Rice testified that defendant denied that he was shot by a police officer, but rather claimed that he had been at a Time Saver in Avondale and was mugged by three men who knocked him unconscious, shot or stabbed him and stole his car. The defendant also admitted owning the car that was involved in the armed robbery. After listening to argument of counsel, the trial judge ruled the evidence inadmissible hearsay.
Defendant now argues that because his statement contained an admission of owning the car, then the whole of his statement should have been admissible, pursuant to LSA-R.S. 15:450 which reads as follows:
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
However, this article does not apply because the statement is not being used against defendant.
*60 The following analysis will focus on the hearsay nature of the statement and the applicability of any of the exceptions to the hearsay rule.
LSA-C.E. art. 802 provides that "hearsay is not admissible except as otherwise provided by this Code or other legislation." Hearsay is defined in LSA-C.E. art. 801 C as a statement, "other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."
Generally, any out-of-court statement of the accused constitutes hearsay unless subject to an exception. Such a statement is admissible as an exception to the hearsay rule when it is an admission against interest. Thus, the defendant may not introduce his own self-serving exculpatory statements because they are hearsay. State v. Freeman, 521 So.2d 783 (La.App. 2nd Cir.1988) writ denied, 538 So.2d 586 (La.1989).
In the present case, defendant apparently intended to use the statement for its exculpatory value. As it was an attempt by him to use an out-of-court statement to prove the truth of the matters asserted, the statement clearly falls within the definition of hearsay. Therefore, unless the statement fits within one of the recognized exceptions, then the trial judge was correct in ruling the statement inadmissible.
The statement was clearly a selfserving declaration and therefore does not constitute an admission against interest which is an exception to the hearsay rule pursuant to LSA-C.E. art. 804 B(3). Nor does the statement appear to come within what was formerly known as the "res gestae exception." Res gestae are events which speak for themselves, under the immediate pressure of the occurrence through the instructive, impulsive and spontaneous words and acts of the participants. Narrative declarations by the defendant are not, as such, considered to be part of the res gestae. State v. Huizar, 414 So.2d 741 (La.1982).
(b) Charity Hospital Records.
At trial defense counsel attempted to offer into evidence the certified copy of the hospital records resulting from his admission to Charity on the night of the offense. The State objected to the relevancy of the records insofar as a number of the records related to treatment several weeks after the offense. When the court ruled that defendant was entitled to introduce those records that dealt with the initial treatment of defendant on the night of the incident, the State objected to allowing in that portion which set forth the history of the wounds given by defendant to the doctor. His version of the wounds to the doctor basically corroborated the statement given to Sergeant Rice that he had been mugged as he left a Time Saver in Avondale. The court ruled that the portion of the medical records setting forth the history of the wounds given by defendant was inadmissible hearsay. Defendant then proffered the evidence for appellate purposes.
The trial judge was correct in excluding the hospital records which contained the statement of the defendant regarding his version of how he received the injuries. Such records would be totally self-serving and are inadmissible hearsay.
This entire assignment is without merit.

ASSIGNMENT OF ERROR NO. 6

EXCESSIVENESS OF SENTENCE
The trial judge sentenced defendant to serve 30 years at hard labor on each of the 2 counts of armed robbery without benefit of parole, probation, or suspension. On the attempted armed robbery conviction, the judge sentenced defendant to serve 20 years at hard labor. The sentences were ordered to run consecutively for a total of 80 years. Defendant now complains that consecutive sentences are not justified and the overall sentence of eighty years is constitutionally excessive in light of the fact that defendant had only one prior felony conviction, he did not appear to be a hardened criminal, and the *61 episode was not unusually violent for an armed robbery.
The defendant was convicted of two counts of armed robbery and one count of attempted armed robbery. The maximum sentence he could have received could have been up to 247 years. Although the trial judge did not elaborate on the reasons for the sentence; he did review the fact that the defendant had arm-robbed two females and attempted to arm-rob a third female. That he had put three lives in jeopardy and was involved in a chase in which shots were fired and other lives were placed in jeopardy. Armed robbery is a serious offense and here the defendant received less than one-third of the maximum sentence. Accordingly, we do not find the sentence excessive.
This assignment has no merit.

ERROR PATENT REVIEW
A review of the record reveals that there is a discrepancy between the transcript and the commitment and minute entry. While the commitment and minute entry indicate that the trial judge imposed defendant's twenty (20) year attempted armed robbery sentence without benefit of parole, probation, or suspension, the transcript does not. When there is a discrepancy between the minute entry and transcript, the transcript should prevail. State v. Lynch, 441 So.2d 732 (La.1983); State v. Lockett, 542 So.2d 670 (La.App. 5th Cir. 1989). Accordingly, the sentence as imposed by the trial judge is illegally lenient because a sentence of imprisonment for attempted armed robbery must be served without benefit of parole, probation or suspension of sentence. State ex rel. Sullivan v. Maggio, 432 So.2d 854 (La.1983). See also LSA-R.S. 14:64 and 14:27D(3).
LSA-C.Cr.P. art. 882 provides as follows:
An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.
A sentence may be reviewed as to its legality on the application of the defendant or of the state;
(1) In an appealable case by appeal; or
(2) In an unappealable case by writs of certiorari and probation.
Nothing in this Article shall be construed to deprive any defendant of his right, in a proper case, to the writ of habeas corpus.
In State v. Fraser, 484 So.2d 122 (La. 1986), the Louisiana Supreme Court noted that an appellate court may not amend or set aside an illegally lenient sentence on its own motion, when defendant alone has appealed and the prosecutor has not sought review of the sentence. See also State v. Brooks, 496 So.2d 1208 (La.App. 5th Cir. 1986) and State v. Gonzales, 515 So.2d 819 (La.App. 5th Cir.1987). In this case, the state failed to raise the issue of the illegally lenient sentence by motion or argument to this court. Accordingly, since the transcript prevails, the minute entry and commitment are amended to delete that portion which denies the defendant the benefit of probation, parole, or suspension insofar as it relates to the attempted armed robbery conviction.
A review of the record also reveals that while the minute entry and commitment indicate that defendant was given credit for time served, the transcript does not so reflect. According to LSA-C.Cr.P. art. 880, the court, when it imposes sentence, shall give a defendant credit for time served. Since art. 880 is mandatory in its language, the defendant must be given credit for time served, despite the fact that it is not specifically stated in the transcript.
Accordingly, the record is amended to give the defendant credit for time served.

DECREE
For the foregoing reasons, the conviction of the defendant is affirmed.
The sentence is amended as indicated and affirmed as amended.
CONVICTION AFFIRMED, SENTENCE AMENDED AND AFFIRMED AS AMENDED.