688 So.2d 108 (1997)
STATE of Louisiana
v.
Ronald HOLLIS.
No. 96-KA-738.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 1997.
David Belfield, III, New Orleans, for Defendant/Appellant, Ronald Hollis.
*109 Jack M. Capella, Leigh Anne Wall, District Attorney, Parish of Jefferson, Gretna, for Plaintiff/Appellee, State of Louisiana.
Before BOWES, GRISBAUM and WICKER, JJ.
BOWES, Judge.
Defendant, Ronald Hollis, appeals his conviction of attempted possession of cocaine. We affirm for the following reasons.
The defendant was charged by bill of information with a violation of La. R.S. 40:979:967C. Following a jury trial, he was found guilty of attempted possession of 9.2 ounces of cocaine and sentenced to five years at hard labor. Subsequently, defendant pleaded guilty to a multiple offender bill and was sentenced to seven and one-half years.

EVIDENCE AND TESTIMONY
Agent Jason Renton of the Jefferson Parish Sheriff's Office testified that a confidential informant told him of a certain individual who wished to purchase a quarter kilo of cocaine. Renton gave the informant a telephone number where he (Renton) could be reached. The prospective purchaser phoned, and the agreement was made for the cocaine purchase for the amount of $6,500.00. Renton made arrangements to meet the caller at 822 Manhattan Boulevard at 3:00 p.m., and told the caller that he would be driving a red car. A tape of that telephone conversation was played for the jury.
Agent Renton informed the other investigating agents of the meeting, and when the surveillance team was in place, he drove to the appointed destination. After about twenty minutes, defendant arrived and parked one spot away from Renton's vehicle. The agent got out of his car and walked up to the defendant's vehicle and asked defendant:
I said, `Do you have the money?', and he says `Yeah. You got the stuff?' I said, `Yeah, it's in my trunk.' I said, `I want to see the money before I go get it' and he says, `Okay' and he had a little pack on his shoulderit was aI call it a little `Gitty pack,' and he unzipped it and he opened it up showing me the money. I said `is that all of sixty-five hundred dollars?' and he said `Yeah, it's all here.' I said, `Okay' And at that time I started to walk back to my car and I told them through aI was wiredand I told them through a microphone, `He's got the money,' which was one of the bust signals, Then the secondary visual bust signal was me opening my trunk. So I immediately went to my trunk and opened the trunk and then Imade it appear like I was getting out a package to walk back to his car, and that's when all the agents came in and detained everybody and placed Mr. Hollis under arrest.
Agent Renton testified there was never any actual cocaine at the scene.
Agent Billy Lewis also testified as an agent who participated in the arrest of the defendant. After his arrest, Lewis searched defendant and found $497.00 on his person. He believed there was a large amount of money in Hollis' vehicle, but did not seize it from the defendant. However, he did identify a copy of a cashier's check for $6,976.00 and testified that the money came from the defendant.
Lieutenant Gerald Monnerjahn of the Jefferson Parish Sheriff's Office testified that he also participated in the arrest. He had been told that the defendant was to arrive at the parking lot with $6,500.00 to purchase a quarter kilo of cocaine from an undercover agent. He witnessed the meeting between Renton and the defendant and the detectives moved in on signal. After defendant was handcuffed, Monnerjahn removed two bags of money from the front seat of his vehicle; he gave the money to another agent at the narcotics office. He also understood that there was no actual cocaine at the scene.
Captain John Thevenot was also told of the meeting with the defendant and initiated the surveillance. He gave Renton a small white paper bag, but there were no narcotics in the bag. He participated in the surveillance. Thevenot explained that currency seized in a particular investigation is counted, taken to a bank, and a cashier's check obtained in the name of the United States Marshall Service or the Jefferson Parish District Attorney's Office. He identified a drug evidence report *110 made out in the present case, and a check for money obtained in the amount of $6,976.00.

ASSIGNMENT OF ERROR
In his sole assignment of error, defendant argues that the evidence was insufficient to support his conviction, inasmuch as there was no proof of the existence of an illegal substance, and no evidence relative to the specific quantity charged.
The appellant argues that because the state did not prove that over twenty-eight grams of cocaine were actually present during the transaction, he cannot be convicted of violating La. R.S. 40:979:967 (C).[1] The appellant also argues that because no cocaine was present, it would have been impossible for him to have purchased over twenty-eight grams of cocaine and, thus, it is impossible for him to be guilty of attempting to purchase over twenty-eight grams of cocaine.
The definition of attempt is found in La. R.S. 14:27(A) as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
In State v. Smith, 661 So.2d 442 (La.1995), the Supreme Court discussed the issue of attempt:
In determining whether the action of a defendant is an attempt, the totality of the facts and circumstances presented by each case must be evaluated. State v. Williams, 490 So.2d 255, 261 (La.1986). The overt act need not be the ultimate step toward or the last possible act in the consummation of the crime attempted. Id. It is the intent to commit the crime, not the possibility of success, that determines whether the act or omission constitutes the crime of attempt.
We held in State v. Thomas, 604 So.2d 52 (La.App. 5 Cir.1992):
Thus, looking at the definition of an `attempt,' the prosecution's burden is to prove specific intent and the commission of an overt act tending toward accomplishing the offense.
Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. L.S.A. 14:10(1).
As it is a state of mind, specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2nd Cir.1989), writ denied, 544 So.2d 398 (La.1989).
See also State v. Bonck, 613 So.2d 1125 (La.App. 5 Cir.1993).
Defendant argues that since attempt is a lesser included offense of possession, the element of possession must be proven. However, *111 since defendant was charged with attempt to possess, the argument is irrelevant.
To prove an attempt to possess, the state must prove that the defendant committed an act tending directly toward the accomplishment of his intent, i.e., possession of the drugs. La. R.S. 14:27(A), supra; State v. Hookfin, 601 So.2d 320 (La.App. 4 Cir.1991); State v. Chambers, 563 So.2d 579 (La.App. 4 Cir.1990). It is immaterial whether or not he would have actually accomplished his purpose, since it is not the possibility of success that determines the crime of attempt. State v. Smith, supra. R.S. 14:27.
In State ex rel J.W., 597 So.2d 1056 (La. App. 2 Cir.1992), the Second Circuit considered a similar problem. There, the defendant appealed his conviction of possession of cocaine on the grounds that there was insufficient evidence that the substance involved was actually cocaine. The court stated as follows:
As we have previously noted, there was insufficient proof that the substance recovered was actually cocaine. Nevertheless, the evidence clearly shows that J.W. subjectively believed that the substance in his possession was cocaine. The substance was packaged like cocaine and J.W.'s statement to his grandmother in the presence of Deputy Byrd that he had possessed cocaine and intended to sell it and had sold cocaine on another occasion, viewed in a light most favorable to the state, proved beyond a reasonable doubt that J.W. specifically intended to possess cocaine with the intent to distribute it. Further, his flight from law enforcement officials and his attempt to dispose of the 11 rocks are additional evidence that J.W. believed the substance was the controlled dangerous substance he thought he held, cocaine.
We conclude that, regardless of whether the substance was cocaine or not, the evidence was sufficient to show J.W. had specific intent to commit the offense of possession of cocaine with the intent to distribute and he took actions tending directly toward the accomplishment of that objective. Accordingly, the state proved the essential elements of the offense of attempted possession of cocaine with intent to distribute.
Although we have found no Louisiana cases which have considered this issue, our holding is in agreement with federal decisions interpreting the analogous federal drug statutes, 21 U.S.C. Sec. 841(a), Sec. 846. See United States v. Pennell, 737 F.2d 521 (6th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); United States v. Everett, 700 F.2d 900 (3d Cir.1983). In both cases the defendant had argued that, as there were no controlled dangerous substances involved, it was legally impossible to violate the drug statutes. The impossibility defenses were rejected by the federal appellate courts which held that a defendant's subjective intent to sell or possess a controlled dangerous substance would support an attempt conviction. The language employed in the Louisiana drug statutes is similar to that employed in the federal statutes and it has been noted that the Louisiana controlled dangerous substances legislation, LSA-R.S. 40:961, et seq., was enacted in part because of a `desire to enact a uniform law which would be similar to the federal legislation.' Comment, The Uniform Controlled Dangerous Substances Act: An Expositive Review, 32 La.L.Rev. 56, 62 (1971). (Emphasis added).
As stated in United States v. Pennell, 737 F.2d 521 (6th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985), cited in State ex rel J.W., supra, in order to avoid unjust attempt convictions (in cases wherein the substance involved in a given situation is a fake narcotic) the (federal) courts have adopted the following evidentiary rule:
In order for a defendant to be guilty of a criminal attempt, the objective acts performed, without any reliance on the accompanying mens rea [must] mark the defendant's conduct as criminal in nature. The acts should be unique rather than so commonplace that they are engaged in by persons not in violation of the law ... In other words, the defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent to purchase or sell actual narcotics.
*112 We find this reasoning to be both logical and persuasive and adopt it herein. The elements of knowledge and intent are states of mind and need not be proven as facts, but rather may be inferred from the circumstances. The jury may draw reasonable inferences to support these contentions based upon the evidence presented at trial. State v. Lavigne, 95-0204 (La.App. 4 Cir. 5/22/96), 675 So.2d 771. Based upon the evidence presented at trial, we find that the jury could have reasonably inferred that the actions of the defendant described by the witnesses corroborated his subjective intent to possess cocaine. Accordingly, this assignment of error is without merit.

ERROR PATENT REVIEW
A review of the record for errors patent was conducted in accordance with State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) was performed and no errors patent were found.
Accordingly, the conviction is affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 40:967 reads in pertinent part:

(C) It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
* * * * * *
(F)(a) Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than ten years, nor more than sixty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
La. R.S. 40:979(A) provides as follows:
Except as otherwise provided herein, any person who attempts or conspires to commit any offense denounced and or made unlawful by the provisions of this Part shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted, but such fine or imprisonment shall not exceed one-half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.