731 So.2d 936 (1999)
STATE of Louisiana, Appellee,
v.
Brandon Reed LANHAM, Appellant.
No. 31,791-KA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1999.
*938 Daryl Gold, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, B. Woodrow Nesbitt, Jr., Assistant District Attorney, Counsel for Appellee.
Before NORRIS, STEWART & PEATROSS, JJ.
PEATROSS, J.
On May 1, 1998, Defendant, Brandon Reed Lanham, was convicted of vehicular homicide by a jury in the First Judicial District Court, Parish of Caddo. On July 1, 1998, Defendant was sentenced to 15 years at hard labor. Defendant appeals his conviction asserting the following five *939 assignments of error: (1) the trial court erred in excluding certain pretrial statements made by Defendant; (2) the trial court erred in admitting demonstrative evidence (a video depicting how the accident occurred) offered by the State; (3) the trial court erred in failing to grant a mistrial following the closing argument of the prosecutor; (4) the trial court erred in charging the jury on flight; and (5) the trial court erred in failing to grant Defendant's two motions for new trial. As a preliminary matter, we note that Defendant failed to brief his fourth assignment of error regarding the jury charge; and, therefore, it is considered abandoned on appeal. See State v. Schwartz, 354 So.2d 1332 (La.1978). For the reasons discussed herein, we find the remaining assignments or error without merit and, therefore, affirm Defendant's conviction.

FACTS
On April 1, 1995, at approximately 2:45 a.m., a two-vehicle accident occurred at the intersection of Fern Street and Ockley Drive in Shreveport. The driver of a Toyota pickup truck, Howard Clinton Belcher, was heading in an easterly direction on Ockley Drive when the left front corner of his vehicle was struck by a Toyota Supra driven by Defendant. As a result of the impact, Mr. Belcher was thrown from his truck, landing in a residential yard on the southeast corner of the intersection. He was pronounced dead upon arrival at the hospital. At the scene, Defendant was administered a field sobriety test and was subsequently arrested for driving while intoxicated ("DWI") and transported to the city jail.
At trial, the evidence focused on the blood alcohol level in Defendant's blood stream and the speed of his vehicle at the time of the accident. Defendant's blood alcohol level at 3:45 a.m., one hour after the accident, was .185 percent. In Louisiana, a blood alcohol level of .10 represents the point of legal intoxication that will support a charge of DWI. The evidence also established that Defendant was traveling in excess of the posted speed limit of 35 miles per hour; his speed was estimated by three of four experts at approximately 60 miles per hour. All parties agreed that Mr. Belcher was traveling approximately 15 miles per hour.

DISCUSSION

Assignment of Error No. 1: Exclusion of pretrial statements made to police
On the morning of opening statements, April 28, 1998, the State filed a motion in limine to exclude the introduction of or reference to all or portions of two statements Defendant gave to the police after he had been taken into custody. At approximately 3:45 a.m., just prior to being administered the Intoxilyzer, Defendant gave a statement in which he discussed details of the accident. In pertinent part, Defendant stated:
Officer Pierce: Can you tell me how the accident occurred?
Defendant: I ran across the other lane and hit him, head on.
Officer Pierce: And what street were you on?
Defendant: Fern.
Officer Pierce: What do you mean, you ran across the center line or what?
Defendant: No, sir.
Officer Pierce: How did you hit that truck?
Defendant: It came across, sir.
Officer Pierce: It came across the intersection.
Defendant: They did.
Officer Pierce: They did. O.K. What color light did you have when you went through that intersection?
Defendant: Green, sir.
Officer Pierce: Green, sir. What direction was that truck coming from? As you're coming down the road was he coming from your left, your right, at you or what?
Defendant: Straight on, sir.

*940 Officer Pierce: Straight at you?
Defendant: Straight on, sir.
Officer Pierce: O.K. So, you're telling me that the truck crossed over the center lane and hit you, or what?
Defendant: He was on the same side that I was.
Officer Pierce: He was on the same side that you were.
Defendant: Well, we both crossed. He was on the center ... I was on the center, he hit me ... we were both going green.
At 4:56 a.m., Defendant was again interviewed and informed that he was being arrested for vehicular homicide. The pertinent part of this statement is as follows:
Defendant: He died? He hit me and he died?
Officer Clary: O.K. Do you understand?
Defendant: I'm just asking. Ya'll said he hit me.
Officer Clary: I haven't said anything.
Defendant: No, he hit me on the passenger side of my car. My passenger side of my car is completely trashed.
* * *
Defendant: He died, dude. Was there anybody else in the car, man? He was the only person? Did he hit me in the side of the car then he died, man? Why did he do that, dude? Oh, my God, man.
Defendant claims that the above statements are res gestae, inculpatory statements and, as such, are admissible under an exception to the hearsay rule. Defendant further argues that, by denying him the right to use these statements at trial, he was prevented from presenting a defense in violation of the Sixth Amendment of the United States Constitution. The State argued, and the trial court found, that the statements were self-serving, exculpatory statements and, therefore, were inadmissible hearsay. We agree.
There can be no question that Defendant's statements quoted above are hearsay, and Defendant does not argue to the contrary. Defendant, rather, asserts that the two statements are part of an entire statement that is more inculpatory than exculpatory and, therefore, should not have been excluded by the trial court. We fail to see, and Defendant has failed to explain, how either of these statements is anything other than exculpatory; Defendant clearly states that he had a green light and that Mr. Belcher hit him. This point is particularly important in light of the proffered defense that Mr. Belcher caused or was a contributing cause to the accident.
Defendant's reliance on State v. Freeman, 521 So.2d 783 (La.App. 2d Cir.1988), writ denied, 538 So.2d 586 (La.1989) is misplaced. Freeman clearly states that a "defendant may not introduce his own self-serving exculpatory statements because they are hearsay." Likewise, in State v. Thomas, 604 So.2d 52 (La.App. 5th Cir.1992), the fifth circuit addressed this issue when the defendant in that case sought to have admitted the entirety of a statement made by him to a police officer following an automobile accident. The defendant in Thomas argued that because the statement contained an admission of his ownership of the automobile, the entire statement should be admissible despite the exculpatory nature of the remainder of the statement. The court explained:
Generally, an out of court statement of the accused constitutes hearsay unless subject to an exception. Such a statement is admissible as an exception to the hearsay rule when it is an admission against interest. Thus, the defendant may not introduce his own self-serving exculpatory statements because they are hearsay. [citing Freeman, supra]
In the present case, defendant apparently intended to use the statement for its exculpatory value. As it was an attempt by him to use an out-of-court *941 statement to prove the truth of the matters asserted, the statement clearly falls within the definition of hearsay. Therefore, unless the statement fits within one of the recognized exceptions, then the trial judge was correct in ruling the statement inadmissible.
The statement was clearly a self-serving declaration and therefore does not constitute an admission against interest which is an exception to the hearsay rule pursuant to LSA-C.E. art. 804(B)(3).
Such is the situation in the instant case; the State did not use any part of Defendant's statement, nor seek to offer it against him. Rather, it was Defendant who sought to introduce his own statements, without testifying and allowing the State to cross-examine him. It is precisely this situation that the Code of Evidence and jurisprudence clearly prohibits. La. C.E. arts. 801(C), 802; State v. Caldwell, 28,514 (La.App.2d Cir.8/21/96), 679 So.2d 973, writ denied, 96-2314 (La.2/21/97), 688 So.2d 521.
Defendant's argument that his statements are res gestae, excited utterances is equally flawed. "The res gestae exception permits admission of events speaking through participants, but not the testimony of participants speaking about events." State v. Day, 468 So.2d 1336 (La.App. 1st Cir.1985); Thomas, supra. The court in Day noted the distinction under Louisiana jurisprudence between admissible excited utterances and inadmissible non-spontaneous narration after an event. When Defendant made his first statement regarding the accident, he was being detained at the police station, in presumably a controlled environment, and was asked "[c]an you tell me how the accident occurred?" Any response to such a question is clearly narration of past events. When Defendant gave his second statement, he was advised of his Miranda rights and that Mr. Belcher had died; and, thereafter, he uttered a self-serving, historical version of the accident that made Mr. Belcher the cause of the accident and his resulting death. We conclude, therefore, that Defendant's statements were not res gestae or excited utterances and do not fall within that exception to the hearsay rule.

Assignment of Error No. 2: Admission of video tape as demonstrative evidence
At trial, the State called Sergeant Mark Rogers, who defense counsel stipulated as an expert in crime scene and accident reconstruction. In investigating the accident, Sergeant Rogers utilized three video cameras, recording from different angles to depict the vehicles as they approached the intersection where the accident occurred. The recording was done during daylight hours. The different views were consolidated into one video by Sergeant Rogers, and overruling defense counsel's objection, the trial court allowed the State to play the video for the jury.
Defendant claims that the trial court erred in allowing the admission of this demonstrative evidence. Defendant's objection to the video was that it was recorded during daylight hours, as opposed to approximately 2:45 a.m. when the accident occurred. This objection was based on relevancy, that the video was more prejudicial than probative and was confusing and/or a waste of time under La. C.E. arts. 401 and 403. We find that this assignment also lacks merit.
Any evidence that tends to make the existence of any fact more or less probable is relevant. Clearly, a depiction of the accident scene is relevant and probative. Generally, once a foundation is established, the weight to be given the evidence is a question for the jury. Day, supra. Sergeant Rogers' testimony provided a foundation for the videos, indicating that they were demonstrative of the conclusions and the opinions he had reached in reconstructing the accident.
A trial court's ruling on the admissibility of evidence, whether photographic or video, will generally not be *942 disturbed on appeal unless the prejudicial effect of the evidence outweighs its probative value. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). In State v. Harvey, 26,613 (La.App.2d Cir.1/25/95), 649 So.2d 783, writ denied, 95-0430 (La.6/30/95), 657 So.2d 1026, this court held that a computer-generated animation of a shooting provided an admissible demonstrative aid to the testimony offered by the coroner as a qualified expert witness. The defense objected to the animations arguing that their probative value was outweighed by their prejudicial effect. In holding that the animations were admissible, we noted that a re-creation need not be exact in every detail. We stated in Harvey, "photographs are admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted." We concluded that the animations did no more than illustrate the coroner's version of how the shooting occurred and enhanced the jury's understanding. Harvey, supra. Likewise, in the instant case, Sergeant Rogers testified that the video was a demonstration of time and distance and of the relative speed of Defendant's vehicle. The video was not intended to be, nor was it offered as, an exact duplication, re-creation or re-enactment of the accident.
In State v. Smith, 95-1826 (La.App. 1st Cir.9/27/96), 681 So.2d 980, writ denied, 96-2568 (La.3/27/97), 692 So.2d 390, the first circuit held that the videotape reenactment of a route traveled by security guards pursuing the defendant had probative value, was not unfairly prejudicial and was properly admitted despite objection that traffic, weather and other conditions differed from when the incident actually took place. In the instant case, Defendant does not claim that the physical characteristics of Ockley Drive, Fern Street or the intersection itself have changed in any way to make them dissimilar to those that existed at the time of the accident. Defendant's only objection is that the video showed a driver's view during daylight hours as opposed to nighttime hours. We find that the video was relevant and admissible as demonstrative evidence of the State's representation of the speed, distance and time relationships involved in the accident. The trial court correctly overruled the objection, noting that the jury could determine the weight to be given this evidence.

Assignment of Error No.3 Failure to grant mistrial
La.C.Cr.P. art. 770(3) states, in pertinent part, that a mistrial shall be ordered when a remark or comment before the jury refers directly or indirectly to the failure of the defendant to testify. The decision to grant or deny a mistrial lies within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. State v. Cotton, 29,101 (La.App.2d Cir.1/22/97), 687 So.2d 1074. An alleged indirect reference "constitutes reversible error only when the prosecutor intended to emphasize the defendant's failure to testify." State v. Gatch, 27,701 (La.App.2d Cir.2/28/96), 669 So.2d 676, writ denied, 96-0810 (La.9/20/96), 679 So.2d 429. References to missing or controverted evidence that would have supported the defense's theory of the case, or argument that the state's case is unrebutted, will generally not reflect an intent to draw attention to the defendant's failure to testify. State v. Gatch, supra; State v. Handley, 96-0631 (La.App. 1st Cir.12/20/96), 686 So.2d 149, writ denied, 97-0189 (La.6/13/97), 695 So.2d 986.
Defendant states that there were "three" instances where the prosecutor, Woody Nesbitt, in his closing argument, made indirect references to Defendant's failure to testify. Defendant, however, in his brief, makes no direct quotation or transcript page reference to the portions of the prosecutor's closing argument that he claims provide grounds for a mistrial. While the failure to specify any particular *943 misconduct or improper comment may very well constitute an abandonment of the issue on appeal, we will address this issue in brief.
During Mr. Nesbitt's closing argument at trial, defense counsel objected to the following comment:
You don't determine a verdict on speculation or conjecture, or because something that you would like to have heard more of wasn't testified to or clarified unless it bears on one of the essential elements of the crime charged.
In response to defense counsel's objection, the trial court stated: "I do not believe that those two statements during Mr. Nesbitt's closing argument individually or even combined would lead the jury to conclude anything necessarily regarding Mr. Lanham's Fifth Amendment rights. And I say that particularly with regard to the context in which Mr. Nesbitt said it." We agree. The trial court then noted that it would advise the jury "that the accused is not required to testify and that fact [sic], there should be no negative inference and no presumption should he choose not to testify [and] that closing arguments don't constitute evidence."
Defendant complains that the other two alleged improper comments made by Mr. Nesbitt, again not directing the court to any specific language, were to the effect that Mr. Belcher was not there to tell the jury what happened. This circuit, as well as others, has held that a reference to the victim's testimony, or the inability of a victim to testify, do not constitute an indirect reference to the failure of the defendant to take the stand. See State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990), State v. Bowman, 95-0667 (La.App. 4th Cir.7/10/96), 677 So.2d 1094, writ denied, 96-2070 (La.1/31/97), 687 So.2d 400. In State v. Smith, supra, the Louisiana Supreme Court held that it was not improper for the district attorney to state: "Who knows what went on in this room besides the man who's seated right here and the two dead boys." In affirming the trial court's denial of the defendant's motion for mistrial, the court in Smith noted that the district attorney's statement was made while discussing the lack of proof regarding certain details of the murders. Likewise, taken in context, any indirect reference by Mr. Nesbitt to Mr. Belcher's being unable to testify was part of a discussion of the lack of some proof of some details surrounding the accident.
After a careful review of the entire closing argument by Mr. Nesbitt, we can find no improper references, direct or indirect, to Defendant's failure to testify which would provide grounds for mistrial. The trial court properly denied the motion for mistrial.

Assignment of Error No. 5: Denial of motions for new trial
On May 7, 1998, Defendant filed a motion for new trial asserting that new and material evidence (an eyewitness to the accident) warranted a new trial pursuant to La.C.Cr.P. art. 851(3). On July 1, 1998, Defendant filed a second motion for new trial alleging that prosecutorial misconduct had so interfered with justice in this case that he should be granted a new trial pursuant to La.C.Cr.P. art. 851(5). Based upon a review of the testimony offered during the hearing on the motions for new trial, and the trial court's ruling in response to the motions, it is apparent that this assignment of error also has no merit.
On May 27, 1998, a hearing was held regarding Defendant's motions and testimony taken from the alleged eyewitness, Christopher Reed. Mr. Reed testified that he and his cousin, Troy Campbell, were stopped in the left-hand turn lane of eastbound Ockley Drive when they saw Mr. Belcher's truck proceed past them, into the intersection, as the light was either yellow turning red or red. Mr. Reed testified that approximately four seconds passed from the time he first noticed the yellow light until their vehicle came to a stop in the left-hand turn lane. Approximately *944 three additional seconds elapsed before Mr. Belcher's vehicle was struck by Defendant. His testimony was apparently offered by the defense to show that Mr. Belcher had, in fact, run the red light. Significantly, however, Mr. Reed twice mentioned in his testimony that, as the vehicle he was in came to a stop, he "really wasn't paying too much attention" to the traffic light.
Mr. Reed also testified that, immediately after the accident, he knocked on the door of a nearby house and asked the occupant to call 911. Mr. Reed further testified that he and Mr. Campbell then left the scene of the accident because Mr. Reed had an outstanding warrant for his arrest regarding failure to pay a DWI fine. Mr. Reed, however, did not come forward for more than three and one-half years after the accident and only after hearing about the trial on television, mistakenly believing that the trial had not yet occurred.
The State offered testimony in opposition to the motion from Steve McCarter from the City of Shreveport, Traffic Engineering Department, and from four radio and television employees. Mr. McCarter testified regarding the timing sequence (or "phasing") of the traffic light at the intersection of Ockley Drive and Fern Street on the date of the accident. At trial, the traffic signal inventory ("TSI") for this light was introduced as a State exhibit.[1] At the hearing, the State reintroduced it as State Exhibit 1. Essentially, the testimony of Mr. McCarter established that, even assuming that Mr. Belcher proceeded through the intersection on a yellow or red light, southbound Fern Street traffic (Defendant) would have also had a red light due to the turn signals on westbound Ockley Drive. Moreover, Defendant would have continued to have a red light for approximately 10.8 seconds after he hit Mr. Belcher. Thus, for 10.8 seconds after eastbound traffic on Ockley Drive (Mr. Belcher's vehicle) had a complete red light, southbound traffic on Fern Street (Defendant's vehicle) would have had a red light.
The trial court denied both of Defendant's motions for new trial stating that it found the testimony of Mr. Reed lacked credibility; and, even assuming his testimony was truthful, it would not have changed the jury verdict in this case. We agree.
The trial court has much discretion in its decision regarding a motion for new trial. State v. Home, 28,327 (La. App.2d Cir.8/21/96), 679 So.2d 953, writ denied, 96-2345 (La.2/21/97), 688 So.2d 521. The merits of such a motion must be viewed with extreme caution in the interest of preserving the finality of judgments. Generally, a motion for new trial will be denied unless injustice has been done. Id. Moreover, in exercising its discretion, the trial court is permitted considerable latitude in evaluating the reliability of evidence and any impact it may have on the verdict. State v. Molinario, 400 So.2d 596 (La.1981).
In a motion for new trial based upon newly discovered evidence, the defendant *945 has the burden of showing four elements:
1. the new evidence was discovered after trial,
2. the failure to discover the evidence at the time of trial was not caused by lack of diligence,
3. the evidence is material to the issues at trial, and
4. the evidence is of such a nature that it would probably have produced a different verdict.
State v. Hammons, 597 So.2d 990 (La. 1992).
In the instant case, after hearing testimony from Mr. Reed, the trial court concluded that any evidence he could offer at a new trial regarding the color of the traffic light would not result in a different verdict in light of the overwhelming evidence against Defendant. Specifically, the trial court stated:
So after having reviewed the testimony of Mr. Reed, I don't accept his testimony for those reasons. Assuming, however, that I would deem his testimony to be credible, I still don't believe that it would change the verdict rendered by the jury. Even if one accepts Mr. Reed's testimony, that Mr. Belcher's light was red and that Mr. Belcher ran the red light by either attempting to go straight through the intersection on Ockley or take a right onto Fern and go southbound, it still remains that Mr. Lanham who had had a night of drinking alcohol, who had been turned down by the last bar which he entered because he was so drunk, Mr. Lanham was either.20 grams percent alcohol or slightly less, was A, intoxicated; and B, traveling at least sixty miles per hour and certainly in any event beyond the speed limit.
* * *
But I believe that ultimately even if Reed/Campbell would have been presented, that the verdict clearly would have been the same.
Thus, Defendant failed to meet his burden of proof on the fourth element of the Hammons test quoted above. Furthermore, there can be no question that the credibility of witnesses who present testimony at new trial hearings is at issue and should be evaluated by the trial judge. The trial court may deny a new trial motion sought on grounds of newly discovered evidence which is suspicious or incredible. State v. Kelly, 576 So.2d 111 (La.App. 2d Cir.1991), writ denied, 580 So.2d 666. In light of the testimony of Mr. Reed, which the trial court found to be incredible, suspicious and factually rebutted by the testimony of the State's witness Steven McCarter, it was not a clear abuse of discretion to deny Defendant's first motion for new trial.
Defendant's second motion for new trial claims that the defense was provided misleading information at trial, or not provided with evidence, regarding the sequence of the traffic lights at the intersection of Ockley Drive and Fern Street. Further, Defendant claims that the prosecution utilized an "improper tactic" by issuing a subpoena to a defense expert, Steve Irwin, and calling him as a witness at trial. Defendant, however, presents no argument in brief regarding the denial of the second motion for new trial. To discuss this portion of the assignment would be an exercise in pure speculation; and, as such, we consider this issue abandoned on appeal. See State v. Schwartz, supra.

CONCLUSION
For the reasons stated herein, Defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] At trial, the TSI was admitted into evidence as State Exhibit 25. Ray Herd, of the Northwest Louisiana Crime Lab, testified as an expert witness for the State. During cross-examination by the defense, Mr. Herd was first questioned regarding his opinion of who ran the red light. On re-direct, the State then questioned Mr. Herd regarding his interpretation of the TSI at the intersection. Mr. Herd testified that the traffic lights on eastbound Ockley Drive (Belcher's vehicle) and southbound Fern Street (Defendant's vehicle) operated in the following sequence: when eastbound Ockley Drive had a green light, southbound Fern Street had a red light and vice versa. He stated that there was no period of time when both lights would be red. The State now admits that Mr. Herd's opinion was a misinterpretation of the traffic light sequencing at the intersection, and only in preparation for the hearing on the motion for new trial did the State learn the correct interpretation of the TSI. We note that both the State and defense were in possession of the TSI prior to trial.