564 So.2d 1297 (1990)
STATE of Louisiana
v.
Percy BARTLEY.
No. 90-KA-119.
Court of Appeals of Louisiana, Fifth Circuit.
June 25, 1990.
*1298 Martha E. Sassone, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for appellant.
John M. Mamoulides, Dist. Atty., Parish of Jefferson, John J. Molaison, Jr., Dorothy A. Pendergast, Asst. Dist. Attys., Louise Korns, of counsel, Office of the Dist. Atty., Gretna, for appellee.
Before CHEHARDY, C.J., and KLIEBERT and GAUDIN, JJ.
CHEHARDY, Chief Judge.
On July 10, 1988 at 2:00 p.m. defendant, Percy Bartley, entered the Taco Bell at 7801 Airline Highway. He pointed a gun at employee, Bonnitta Magee, obtained $31.00 from her register and fled.
Defendant was identified as the robbery suspect in separate photographic lineups by both Ms. Magee and the manager, Stephanie Alexander, on July 13 and July 15, 1988, respectively. He was arrested and charged with one count of armed robbery. Bartley was tried and convicted by unanimous vote of a 12-member jury. He was sentenced to 75 years at hard labor without benefit of probation, parole, or suspension of sentence.
On appeal, defendant assigns the following as reversible error: (1) the trial court's denial of his motion to suppress the photographic identification; (2) the trial court's denial of his motion for new trial on the basis that his conviction was obtained on insufficient evidence; (3) the trial court's imposition of an excessive sentence against him; and (4) all errors patent in the record.[1] After careful review of the record *1299 we find that no assigned error merits reversal; defendant's conviction and sentence are affirmed.

ASSIGNMENT OF ERROR NUMBER ONE
At the motion to suppress the photographic identification of defendant, Bonnitta Magee testified that Bartley entered the store and asked for a drink of water. He stood two and one-half feet from her when he committed the robbery. She observed him clearly for 15 to 20 minutes.
After the robbery, Ms. Magee described her assailant to the investigating police officer as a man with a long scar running from his forehead to his cheek on the right side of his face. Five days later she selected defendant's photograph from the six-picture lineup because, she testified, he was the man who robbed her.
On examination, Ms. Magee admitted to seeing defendant sitting in a police car on July 11, 1988, the day of his arrest. However, she stated categorically that her identification of Bartley during the photographic lineup was based on her view of him during the robbery and volunteered, "I would recognize him anywhere."
Stephanie Alexander stood eight feet from defendant, behind and to the left of Ms. Magee. Her view of defendant was unobstructed during the robbery: "That's the only thing that really caught my eye was his scar when he came in." On crossexamination, Ms. Alexander admitted that she saw defendant for five minutes on July 11, 1988 sitting in the back seat of a police unit. She also agreed that of the six photos shown to her no suspect had a scar on the right side of his face as long or as large as defendant's. Nevertheless, Ms. Alexander testified that her identification of defendant was based on her observing him during the robbery. She stated there was no doubt in her mind that defendant was the armed robber.
On appeal, defendant Bartley contends that the photographic identification was tainted and should have been suppressed for two reasons: (1) his was the only photograph shown of a man with a long scar, temple to cheekbone, down the right side of his face; and (2) both witnesses had the opportunity to view him in police custody on July 11, 1988, days before selecting him out of a photographic lineup.
The issue at a suppression hearing is the constitutionality of the procedures used by the police in procuring the identification of the defendant, that is, whether the police action suggested to the victim of a crime that the defendant should be identified as the perpetrator. LSA-C.Cr.P. art. 703. A defendant who seeks to suppress a photographic identification bears a two-fold burden: he must prove both that the identification was impermissibly suggestive and that there was a substantial likelihood of irreparable misidentification as a result of the identification process. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Photographs employed in a lineup identification are suggestive if they display the defendant so singularly that the witness' attention is unduly focused on defendant. State v. Smith, 430 So.2d 31 (La. 1983). Bartley argued that use of his photograph, a front and right profile view which shows a scar running from his right temple to cheek, singles him out for identification. State v. O'Neal, 478 So.2d 1311 (La.App. 5 Cir. 1985). This contention has no merit.
Strict identity of the physical characteristics among persons depicted in a photograph array is not required. What is required is a resemblance sufficient to reasonably test the identification. State v. Guillot, 353 So.2d 1005 (La.1977), and see, e.g., State v. Medford, 489 So.2d 957 (La. App. 5 Cir.1986), wherein the five subjects depicted in the photographs were white males with full facial hair, apparently of the same age group, all having hair of a similar length. During the suppression *1300 hearing, the court reviewed the photographs and found them to portray suspects with similar facial characteristics: "I do notice a scar on a couple of the other photographs, other than defendant's."
We note that the photographs depict six light-to-medium skinned black males, wearing either medium or close-cut afros, all having thin mustaches. Two of the men in profile, exhibit scars on the right side of their faces at the temple, albeit not as large as defendant's. One suspect has a keloid scar over his right eye. Defendant's photograph, whether displayed singly or in connection with the other photographs, was not unduly suggestive.
Defendant's alternative contention is that the witnesses' identification view of him was tainted because of the pre-identification view of him in police custody. He argues that this depiction bolstered their ability to select him from the photographic lineup.
It is not merely a suggestive identification procedure but rather the substantial likelihood of misidentification which denies a defendant due process of law. The reliability of an identification is a pre-requisite to admission. Manson, 97 S.Ct. at 2253.
Both Ms. Magee and Ms. Alexander, standing less than ten feet away, observed defendant for 15-20 minutes during the robbery. They described him to police in detail. Each selected him from a photographic lineup within five days of the robbery.
Both witnesses testified that they received no prompting or suggestion of which suspect, if any, to select from the photographic lineup. There is no indication that their observance of defendant in police custody was anything but inadvertent. Both witnesses testified that their identification of defendant was based on their watching him commit the robbery. Assuming, but not agreeing that the witnesses' pre-identification observance of defendant suggested that he was the perpetrator of the armed robbery, our examination of the reliability factors set forth in Manson convince us that there was no likelihood that defendant was misidentified.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant Bartley argues that the prosecution failed to prove the essential elements of the crime charged, specifically his identity as the armed robber. He contends that the evidence against him was insufficient to support a conviction. State v. Raymo, 419 So.2d 858 (La.1982). He asserts that the trial court erred in denying his motion for new trial. LSA-C.Cr.P. art. 851.
In examining whether the evidence adduced at trial was sufficient to support a conviction we must determine that the record evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact of defendant's guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Armed robbery, LSA-R.S. 14:64, is defined by the criminal code as: "... the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." At trial, Ms. Magee testified that defendant did not accept the cup of water she produced for him. Rather, he leaned forward on the counter, produced a gun from under his shirt and pointed it in her direction. He instructed her to place the cash register money in a bagjust bills, no coinstook the bag and left the store. Although the gun was partially concealed beneath Bartley's shirt, Ms. Magee stated that she clearly saw the silver nozzle of what she knew was a gun. She complied with defendant's request for money because she feared for her life. Mindful of Jackson we are convinced that the elements of the armed robbery were proved. State v. Mayeux, 556 So.2d 142 (La.App. 5 Cir.1990).
Defendant's primary challenge at the motion for new trial was that the state failed to prove that it was Bartley who committed the crime. Under the Jackson rationale, the prosecution was required to *1301 negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Knox, 472 So.2d 170 (La. App. 5 Cir.1985). Defendant argues that due to the witnesses' pre-identification viewing of defendant, and the suggestive photographic identification, the state failed to carry this burden.
At trial, Ms. Magee and Ms. Alexander reiterated their post-robbery descriptions of the perpetrator. The jury was made aware that both witnesses had seen defendant sitting in a police car on the day following the robbery and had subsequently identified defendant in a photographic lineup. Each witness testified that her identification of defendant in the photographic lineup and in open court was based on her face-to-face confrontation with him during the robbery.
We have already held, in reviewing the challenge to the motion to suppress, that no due process violation occurred. Absent a constitutional violation, a challenge to the witnesses' veracity and powers of observation is a matter for the jury to decide at trial on the merits. Here the jury was called upon to assess the credibility of these witnesses, to weigh the accuracy of their identification of defendant. The unanimous verdict evidences their belief that the identification was valid. We are convinced that the state negated any likelihood of misidentification. State v. Smith, supra. Based on our review of the record, through the eyes of a hypothetical rational trier of fact, we conclude that the evidence viewed in the light most favorable to the prosecution proves beyond a reasonable doubt that Percy Bartley committed the armed robbery for which he was convicted.
Insofar as this assignment of error is viewed solely as a challenge to the trial court's denial of new trial under LSA-C. Cr.P. art. 851(1), the record reflects that the trial judge did make the required factual determination by independently weighing the evidence presented. State v. Landry, 524 So.2d 1261 (La.App. 3 Cir.1988), writ granted on other grounds, 531 So.2d 254 (La.1988). There is no error of law in this ruling. LSA-C.Cr.P. art. 858.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends that his sentence to 75 years at hard labor is excessive in that it violates the sentencing guidelines established in LSA-C.Cr.P. art. 894.1.
The sentence imposed against defendant is within the parameters established by LSA-R.S. 14:64(B): from 5 to 99 years confinement for an armed robbery conviction. A statutorily appropriate sentence may nevertheless present a constitutional violation if it constitutes "cruel, excessive or unusual punishment." State v. Sepulvado, 367 So.2d 762 (La.1979).
LSA-C.Cr.P. art. 894.1 was enacted to protect against grossly disproportionate sentencing. It obliges the sentencing judge to consider certain criteria which may justify imprisonment and certain other criteria which must be given weight in favor of a suspended sentence. Analysis of both sets of factors enables the trial court to determine the length of confinement if it finds that incarceration is justified. Sepulvado at 767-768. The statutory guidelines thus provide a tool for use by the trial judge, in passing sentence, which enables him to tailor the sentence to the offense and the offender.
This compliance with the statutory mandate later affords the reviewing court insight by which to measure the propriety of the sentence. To this end, while the trial judge need not articulate every factor set forth in art. 894.1, the record must show that he adequately considered the guidelines in particularizing the penalty to the individual defendant. State v. Soco, 441 So.2d 719 (La.1983).
Adherence to the codal guidelines is apparent in the case before us. At the sentencing hearing the judge, with benefit of the Pre-Sentence Investigation report, outlined his reasons for incarcerating defendant. Bartley's two prior felony convictions, one with jail time had not deterred him from committing the instant crime one which, by use of a dangerous weapon, threatened serious harm to the employee and manager. The judge therefore believed *1302 that a suspended sentence would not deter defendant from future criminal acts. Rather, he found that defendant was in need of correctional treatment for a term sufficient to impress upon him the severity of the crime, notwithstanding the presence of mitigating factors including defendant's education and family background. As required, the district court adequately stated the factual basis for his long-term incarceration of defendant. LSA-C.Cr.P. art. 894.1(C). This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant cites as reversible error any and all errors patent. LSA-C.Cr.P. art. 920(2). On review of the full record, see, e.g., State v. Oliveaux, 312 So.2d 337 (La. 1975), State v. Gilmore, 522 So.2d 658 (La. App. 5 Cir.1988), we find no such error.

DECREE
For the foregoing reasons, the conviction and sentence of defendant, Percy Bartley, are affirmed.
AFFIRMED.
NOTES
[1] Defendant formally assigned four additional errors in post-verdict pleading. These alleged errors are neither assigned nor briefed and are deemed abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).