781 So.2d 827 (2001)
STATE of Louisiana
v.
Eric D. CALVIN.
No. 00-KA-1505.
Court of Appeal of Louisiana, Fifth Circuit.
February 28, 2001.
*828 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Gregory M. Kennedy, Assistant District Attorneys, Gretna, Louisiana, for the State.
*829 Gwendolyn K. Brown, Baton Rouge, Louisiana, for defendant-appellant.
Court composed of Judges SOL GOTHARD, CLARENCE E. McMANUS and PATRICK M. SCHOTT, Pro Tempore.
McMANUS, Judge.
The Defendant, Eric D. Calvin, was convicted of first degree robbery and armed robbery. For the reasons that follow, we find that the evidence is sufficient to support the convictions. Additionally, we find that the sentences imposed are not excessive.

STATEMENT OF THE CASE
Eric D. Calvin, was originally charged by an 11-count bill of information with seven counts of armed robbery and four counts of first degree robbery, in violation of LSA-R.S. 14:64 and 14:64.1. Defendant pled not guilty.
After several continuances, a jury trial proceeded only as to Counts 5, 6, and 7, armed robberies, and Count 10, first degree robbery. On October 14, 1999, a unanimous 12-person jury found Defendant guilty as charged on all counts. The trial judge sentenced Defendant to 50 years at hard labor on each count of armed robbery and 20 years at hard labor on the count of first degree robbery. All sentences were imposed consecutively without benefit of probation, parole, or suspension of sentence. After sentencing, the state dismissed the remaining four counts of armed robbery and the three counts of first degree robbery. Defendant filed a motion to reconsider sentence which was denied by the trial judge.

FACTS
Detectives Jorge Giron, Danny O'Neil, Michael Cunningham, and Michael Glaser investigated robberies occurring throughout Jefferson Parish. These involved a Dairy Queen with Wayne LeBlanc (Le-Blanc) as the victim on October 5, 1997; an EZ Serve robbery with Lisa Braggs (Braggs) as the victim on September 27, 1997; an EZ Serve robbery of Katina Cage (Cage) occurring on September 25, 1997; and, a Circle K robbery of Lillian Quentinella (Quentinella) occurring in September 1997.
At the LeBlanc robbery, Detective Giron obtained a license plate number of the vehicle associated with the robbery and learned that Defendant borrowed the vehicle. The officer assisted Detective O'Neil in interviewing Defendant where Defendant voluntarily gave a statement concerning his involvement in the Dairy Queen robbery.
Detective O'Neil testified that after Defendant waived his constitutional rights he voluntarily gave a statement which was taped and transcribed. The portion of Defendant's statement concerning the Dairy Queen robbery was introduced as State's Exhibit Number 1. The detective also showed the victim a photographic lineup. LeBlanc identified Defendant. The statement is Defendant's admission that he committed the robbery; however, he stated that he used a fake plastic gun he stole from another store.
LeBlanc testified that Defendant robbed him of a few hundred dollars. LeBlanc had no doubt he saw a gun. He saw the barrel of a gun that was inside a bag. He also had no doubt Defendant was the person who robbed him at gunpoint.
Detective Cunningham testified that he investigated robberies occurring at the Circle K and EZ Serve stores in Kenner. He interviewed Braggs and Quentinella. Both victims identified Defendant in a photographic lineup.
*830 Defendant admitted he had a gun and robbed the victim at the Circle K. Regarding the other robberies, he stated he either placed his hand under his shirt or wrapped a towel around his hand and told the victims he had a gun. He admitted that for one robbery he used a pink towel, a shop towel, wrapped around his hand and told the victim to open the register while he grabbed the money. The document contains Defendant's signature. The detective did not find any weapon.
Cage told him Defendant had a towel covering a gun and that it looked like the gun had a silver barrel. The officer reviewed surveillance tapes of these three robberies and noted he did not see any weapon, but did see Defendant had his hand in a rag covering something. He explained there was one video from the EZ Serve where Defendant carried a rag covering his hand but the video did indicate what was under the rag. The victim in that case told the officer she saw the barrel of a gun under the rag. That victim stated she was positive it was a gun. Detective Michael Glaser testified that he showed a photographic lineup to Cage, who identified Defendant as the person who robbed her.
Quentinella testified that Defendant placed something under his shirt and told her he had a gun. He demanded money and stole $27 to $30. She could not tell what he had under the shirt. She did not see any type of weapon. She viewed the surveillance video and could not determine whether he had a weapon. The jury returned a verdict of first degree robbery as to this victim and armed robbery as to the remaining charges.
Cage testified she was employed at the EZ Serve on September 25, 1997. That evening the store was busy. Defendant continued to bring items to the counter and ask her prices despite the fact that the price was marked on the items. Defendant said the price was too high. When she told him the price, he slammed the items on the counter and walked away.
Approximately five minutes later, he left the store and she continued to ring up the waiting customers. She thought Defendant acted strangely. She did not get a good look at Defendant at that time but did see him again. Defendant reentered the store approximately two hours later, approaching her register. At that time, there was no one else in the store. He told her to give him the money in the cash register. She did not see his hands. She then asked him to repeat what he said and he placed his hand on the counter. He repeated his demand and she backed away from the register. When he placed his hand on the counter she saw what appeared to be a gun wrapped in a towel. The only portion she could see was the front part, and it looked like the barrel of a gun to her.
She backed away from the register and told him to take the money. She was newly hired and did not know how to open the cash register unless she gave change. Defendant stuck his hand over the counter, hit the button, and the drawer opened. He reached in and retrieved the money. Next, he told her to get on the floor because he did not want her to see him exit. He threatened to shoot her, so she complied with his request. After he left, she called 911 and the manager. She later learned that Defendant took $29 from the register. She had no difficulty identifying Defendant in the photographic lineup. She had no doubt Defendant was the person who robbed her. She stated that she has seen guns before this incident, and she believed she saw was the barrel of a gun.
Braggs testified she was alone. Defendant entered the store and asked her for a pack of cigarettes. He told her he had a *831 gun. He asked her to open the register and while she opened the register he reached over and grabbed no more than $60.00 from the register. He also took the cigarettes that she gave him, then he told her to get on the ground as he ran out of the store.
Defendant had a gun in his hand that was wrapped around a towel. The barrel of the gun was sticking out and it was black. She stated that she could clearly see the gun. Braggs selected Defendant in a photographic lineup.

ASSIGNMENTS OF ERROR NUMBER ONE AND TWO
These two assignments of error will be combined, as they both relate to Defendant's conviction for the armed robbery of Katina Cage. Defendant argues that the evidence presented at trial is insufficient to support the conviction of armed robbery of Katina Cage. Defendant points out that Cage gave non-committal answers when asked whether she actually saw a gun. He claims that at most, she testified her assailant demanded money and only appeared to have a gun wrapped in a towel. The state notes that although Defendant did not brandish the entire gun at the victim, the victim saw the barrel of the gun protruding from the towel. Also, Defendant threatened to shoot the victim with the weapon. Citing State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 966, the state asserts that it did not need to actually produce the weapon to satisfy its burden.
The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to Jackson, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
Addressing specifically the elements of LSA-R.S. 14:64, this Court, in Wickem, stated:
Under LSA-R.S. 14:64, the state must prove beyond a reasonable doubt: (1) a taking, (2) of anything of value, (3) from the person of or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon. State v. Cittadino, 628 So.2d 251, 255 (La.App. 5th Cir.1993). In addition, the act of pointing a gun at a victim satisfies the fourth element of the crimeuse of force or intimidation. State v. Cittadino, 628 So.2d at 255; State v. Bartley, 564 So.2d 1297, 1300 (La.App. 5th Cir.1990).
759 So.2d at 965.
Defendant only disputes insufficient evidence regarding proof that the assailant was armed with a dangerous weapon. In State v. Bartley, 564 So.2d 1297, 1300 (La. App. 5 Cir.1990), this Court addressed a similar issue. This Court concluded that although the gun was partially concealed beneath defendant's shirt, the victim stated that she clearly saw the silver nozzle of what she knew was a gun. She feared for her life and did as defendant requested. This Court held that there was sufficient evidence to support the conviction.
Despite Defendant's assertions to the contrary, it appears the victim was not noncommittal regarding the gun. She testified that she really believed that what he held was a gun. She was familiar with guns and her evaluation of the object she saw was based on this experience. She described the object as a gun's barrel, chrome in color.
*832 This Court has held that the production of a weapon or other physical evidence is not required as long as the state can establish all of the elements of armed robbery beyond a reasonable doubt through the testimony of its witnesses. State v. Brown, 591 So.2d 791 (La.App. 5 Cir.1991).
It is not the function of this Court to assess credibility or to re-weigh evidence. State v. Hotoph, 99-243 (La. App. 5 Cir. 11/10/99), 750 So.2d 1036. A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the fact finding function of the jury only to the extent necessary to assure that the Defendant has received due process of law. State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19, 20.
The jury evidently accepted the victim's testimony that based on her familiarity with guns the object looked like the barrel of a gun wrapped in a towel. Thus, after viewing the evidence in the light most favorable to the prosecution, the jury could have reasonably concluded Defendant was armed with a dangerous weapon.

ASSIGNMENT OF ERROR NUMBER THREE
The remaining assignments of error all address the alleged excessiveness of the sentence, and have been combined together for purposes of this opinion. Defendant filed a motion to reconsider the sentence arguing the sentence was constitutionally excessive and that the trial judge failed to consider mitigating circumstances. In sentencing Defendant, the trial judge stated that he considered the sentencing guidelines and the nature of the offenses. After sentencing, the state dismissed the remaining counts of armed robbery as well as another charge in a separate proceeding. The bill of information also indicates that the state dismissed the three counts of first degree robbery. The state indicated it would file a multiple bill in a separate case involving an escape from jail.
On appeal, Defendant argues the record does not provide support for the sentences imposed because the trial judge did not articulate his reasons for sentencing.
At sentencing, the trial judge did not state his reasons for sentencing, but did mention he considered the sentencing guidelines. Defendant asserts that the trial court's failure to articulate reasons for sentencing as provided by LSA-C.Cr.P. art. 894.1, the general sentencing guidelines, requires a remand.
The state argues that this court has held that a remand for re-sentencing is not warranted where a record does not expressly indicate all of the factors listed in Article 894.1. Citing, State v. Sanders, 98-609 (La.App. 5 Cir. 12/16/98), 728 So.2d 470, 472. The state argues the trial judge mentioned that he considered the sentencing guidelines when he stated he considered factors in sentencing. Since the trial judge had full knowledge of all the facts of the case, he was well aware of the circumstances of the crimes which included the use of a gun. Thus, the state argues the record clearly reveals an adequate factual basis for the sentences.
Regarding the claim of constitutional excessiveness, the state argues the sentences imposed were far below the maximum sentences. For the armed robbery convictions, at the time of the offenses, Defendant's sentencing exposure was a minimum of five years to a maximum of 99 years at hard labor without the benefit of probation, parole, or suspension of sentence. *833 LSA-R.S. 14:64B. Defendant's sentences of 50 years are within the middle portion of the sentencing ranges.
For the first degree robbery conviction, Defendant's sentencing exposure was a minimum of three years to a maximum of 40 years at hard labor without the benefit of probation, parole, or suspension of sentence. LSA-R.S. 14:64.1 B. Defendant's sentence of 20 years was within the middle portion of the sentencing range.
In State v. Hardy, 98-25, pp. 12-13 (La.App. 5 Cir. 5/13/98), 715 So.2d 466, 473 (citations omitted), this Court explained:
The Louisiana Constitution in Article 1, Section 20, prohibits the imposition of excessive punishment. Even a sentence within the prescribed statutory limit may violate a defendant's right against excessive punishment.
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentencing is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The trial judge has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside as excessive absent manifest abuse of that broad discretion.
Sentences must be individualized to be compatible with the offenders as well as the offenses. In deciding whether to confine a defendant or grant probation, the judge must consider certain factors enumerated in La.C.Cr.P. art. 894.1(A), (B). Although not every aggravating and mitigating circumstance needs to be articulated, the record must show the sentencing court adequately considered the sentencing guidelines. However, a remand for more complete compliance with Article 894.1 is not necessary when the sentence imposed is not apparently severe, or where the record otherwise clearly illumines the sentencing choice.
On review, this Court must ensure that the defendant's sentence was individualized and tailored to [defendant] an the particular offense [defendant] committed.
In the instant case, we see no abuse of the trial judge's discretion in imposing the sentences. Under these circumstances, a remand for more complete compliance with Article 894.1 is not necessary when the sentence imposed is not apparently severe, or where the record otherwise clearly illumines the sentencing choice.
Defendant also argues that the trial judge erred in ordering the sentences to be served consecutively. The state notes that Defendant did not raise the issue regarding consecutive sentences either at the hearing or in his written motion. Therefore, the state asserts Defendant is precluded from raising this issue on appeal.
Regarding the issue of consecutive sentences, this Court has recognized that in order to preserve the issue for appellate review Defendant must assert the ground in the motion to reconsider sentence. If he does not, then he is relegated to review of a claim of bare constitutional excessiveness, and as in this case, the preserved claim that the trial court failed to consider mitigating factors.
LSA-C.Cr.P. art. 881.1 D provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or *834 from urging any ground not raised in the motion on appeal or review.
Trial counsel's motion to reconsider sentence did not raise the issue of consecutive sentences. Thus, it appears Defendant is now attempting to expand his motion to include failure to impose concurrent sentences.
In State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 789, this Court noted the failure to file a motion or to state the specific grounds on which the motion is based, precludes defendant from raising those grounds on appeal.
Concerning the issue of consecutive sentences, we hold that the Defendant is precluded from presenting any argument other than those claims raised in his motion.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990).
Pursuant to LSA-C.Cr.P. art. 930.8, the trial judge informed Defendant that he had two years in which to file for post conviction relief, but he failed to specify the date at which the period began to run. The transcript, however, recites that Defendant was properly informed he had two years from the date the judgment of conviction and sentence became final to seek relief. The transcript controls. State v. Lynch, 441 So.2d 732, 734 (La. 1983).
In accordance with State v. Williams, 98-651 (La.App. 5 Cir. 2/10/99), 729 So.2d 14, 22, we remand this case so that the trial judge may inform Defendant of the correct provisions of the article by sending appropriate written notice to him within 10 days of the opinion, and filing written proof in the record that Defendant received such notice.

CONCLUSION
We find that the evidence was sufficient to support a conviction of armed robbery of Katina Cage. Furthermore, we hold that the trial judge did not abuse his discretion in imposing the sentences. The conviction is affirmed, and the case is remanded so that the trial judge may inform Defendant of the correct provisions of LSA-C.Cr.P. art. 930.8.
AFFIRMED AND REMANDED TO CORRECT ERRORS PATENT.