STATE OF LOUISIANA
v.
RICHARD B. LAY
No. 2007 KA 2155.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
WALTER P. REED, District Attorney Covington, LA, KATHRYN LANDRY, Special Appeals Counsel BATON ROUGE, LA, Counsel for Appellee State of Louisiana.
STEPHANIE GRIFFITH BEARD, COVINGTON, LA, Counsel for Defendant/Appellant, Richard B. Lay.
RICHARD B. LAY ANGIE, LA, Pro Se.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
HUGHES, J.
The defendant, Richard Lay, was charged by bill of information with attempted possession of cocaine, a violation of LSA-R.S. 40:967(C) and LSA-R.S. 14:27. He pled not guilty. Following a jury trial, the defendant was found guilty as charged and sentenced to two and one-half years imprisonment at hard labor. The State subsequently filed a multiple offender bill of information, and following a hearing, the defendant was adjudicated a fourth felony habitual offender. The previously imposed sentence was vacated, and the defendant was sentenced to twenty years imprisonment at hard labor without benefit of probation or suspension of sentence. The defendant now appeals. In his original briefs, he designated six counseled assignments of error and eleven pro se assignments of error. Thereafter, counsel filed a reply brief, and the defendant filed pro se supplemental arguments. We affirm the conviction, habitual offender adjudication, and sentence.

FACTS
On April 16, 2004, Deputy Tyrone Washington, with the St. Tammany Parish Sheriffs Office, was working undercover as a drug dealer in the front yard of the residence of Bruce Whitehead. Whitehead had been arrested earlier that evening for narcotics transactions at his residence. In what is known as a "reversal," after Whitehead was removed from his residence, Deputy Washington posed as someone who was selling drugs in Whitehead's stead. When potential buyers would approach Deputy Washington and ask of Whitehead's whereabouts, Deputy Washington would tell them that Whitehead was not there, and that he was conducting business for Whitehead. Deputy Washington was not selling real drugs. Instead, he was using pieces of macadamia nuts to resemble rocks of crack cocaine.
The defendant approached Deputy Washington and inquired about purchasing cocaine.[1] After some discussion, the defendant took possession of five facsimile rocks of cocaine. The defendant then gave four rocks back to Deputy Washington and kept one rock so that he could test it since this crack cocaine did not appear to be what Whitehead usually sold. The defendant pulled out rolling papers to smoke the rock. Before the defendant could roll the rock and test it, he was arrested. The transaction was videotaped and audiotaped.

COUNSELED ASSIGNMENTS OF ERROR NUMBERS 1 AND 2
We address these interrelated assignments of error together. In his first counseled assignment of error, the defendant argues that the trial court violated his constitutional right to conflict-free effective assistance of counsel. Specifically, the defendant contends that the trial court erred in denying defense counsel's motions to withdraw and his pro se motions to remove defense counsel due to a conflict of interest.
In his second counseled assignment of error, the defendant argues that the trial court erred in denying his motion for new trial. Specifically, the defendant contends that the trial court committed error in refusing to allow him to waive his right to counsel and represent himself.

Right to Conflict-free Effective Assistance of Counsel
At his arraignment, the defendant was represented by assistant public defender, David Craig, Jr. However, there was a conflict of interest with the Indigent Defender Office because the defendant had pending litigation against one or more public defenders for ineffective assistance of counsel on a prior criminal case. Mr. Craig was removed from the case and, on March 9, 2005, Robert Fleming was appointed as conflict counsel to represent the defendant. Less than three weeks later, Mr. Fleming filed a motion to withdraw as attorney of record. According to the motion to withdraw, Mr. Fleming was not able to represent the defendant because, when he met the defendant at St. Tammany Parish Jail, he was "unable to effectively communicate with Mr. Lay" and he was "unable to establish a rapport or any type of attorney/client relationship with Mr. Lay." Judge Martin Coady, the presiding judge over the defendant's case, denied Mr. Fleming's motion to withdraw. The defendant subsequently filed a pro se motion to recuse Judge Coady. Judge Patricia Hedges was initially assigned to hear the defendant's motion to recuse Judge Coady. At the continued motion to recuse hearing on November 4, 2005, Judge Hedges allowed Mr. Fleming to withdraw as counsel. According to the minutes from this hearing, Judge Childress had appointed Doyle "Buddy" Spell, Jr., as attorney for the defendant, and had allowed Mr. Fleming to withdraw previously.[2]
The record indicates that the defendant specifically requested that Mr. Spell represent him. Despite this, the representation, as with previous representation, became contentious. The defendant, not only with Mr. Spell but with the trial court as well, was repeatedly recalcitrant and obstreperous. On several occasions, Mr. Spell moved to withdraw as counsel because he felt he could not develop a properly working attorney-client relationship with the defendant. These motions were denied. The defendant refused to listen to Mr. Spell or discuss his case with him because, according to the defendant, Mr. Spell allegedly failed to communicate with the defendant and would not contact witnesses or agree to raise certain defenses that the defendant wanted to raise at trial.[3] Because of these perceived conflicts by the defendant, the defendant filed several pro se motions to remove Mr. Spell and have conflict-free counsel appointed.
Louisiana Constitution article 1, § 13 provides in pertinent part that "[a]t each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." The Sixth Amendment to the United States Constitution likewise carries such a guarantee. As a general proposition, a person accused in a criminal trial has the right to counsel of his choice. If a defendant is indigent, he has the right to court-appointed counsel. An indigent defendant does not have the right to have a particular attorney appointed to represent him. An indigent's right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. The question of withdrawal of counsel largely rests with the discretion of the trial judge, and his ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. State v. Leger, XXXX-XXXX, p. 43 (La. 7/10/06), 936 So.2d 108, 142, cert, denied, __ U.S. __, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
Despite the defendant's various assertions about the inadequacies of his representation, the trial court found Mr. Spell to be adequate counsel. At a hearing about two months prior to trial, Mr. Spell reurged his motion to withdraw. In denying the motion, the trial court ruled in pertinent part, "I find that basically it's been a design to delay and frustrate the system. I find that Mr. Spell is a very competent lawyer and understands criminal law and can do a good job for Mr. Lay."
The record amply indicates that, rather than demonstrating any real need requiring the dismissal of Mr. Spell, the defendant manipulated his right to choose counsel to obstruct orderly procedure in the court and to thwart the administration of justice. See Leger, XXXX-XXXX at pp. 43 and 48, 936 So.2d at 142 and 145. We find no abuse of discretion in the trial court's failing to remove Mr. Spell based on claims of conflict of interest.
In his counseled brief, the defendant alleges several examples of how the conflict of interest between him and Mr. Spell resulted in ineffective assistance of counsel. At trial, Mr. Spell had the defendant read aloud the contents of two disagreeable letters written by the defendant and sent to Mr. Spell, and suggests that this approach used by defense counsel "irreparably prejudiced the defendant in front of the jury, contributing to the conviction."[4] The defendant further points out in his brief that Mr. Spell's objection to the multiple offender bill of information was cursory and unresponsive to the allegations, and that Mr. Spell's presence at the multiple offender hearing "amounted to little more than a warm body in a chair." The defendant also states that Mr. Spell did not voir dire or cross-examine the fingerprint expert at the multiple offender hearing.
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated the test for evaluating the competence of trial counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
In evaluating the performance of counsel, the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. State v. Morgan, 472 So.2d 934, 937 (La. App. 1 Cir. 1985). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. State v. Robinson, 471 So.2d 1035, 1038-39 (La. App. 1 Cir.), writ denied, 476 So.2d 350 (La. 1985).
A claim of ineffective assistance of counsel is more properly raised by an application for postconviction relief in the district court, where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Carter, 96-0337, p. 10 (La. App. 1 Cir. 11/8/96), 684 So.2d 432, 438.
In the instant matter, the allegations of ineffective assistance of counsel at trial cannot be sufficiently investigated from an inspection of the record alone. Decisions relating to investigation, preparation, and strategy cannot possibly be reviewed on appeal. Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond what is contained in the instant record, could these allegations be sufficiently investigated.[5] Accordingly, these allegations are not subject to appellate review. See State v. Albert, 96-1991, p. 11 (La. App. 1 Cir. 6/20/97), 697 So.2d 1355, 1363-64. See also State v. Johnson, XXXX-XXXX, p. 15 (La. App. 1 Cir. 12/28/06), 951 So.2d 294, 304.
Regarding the claim of ineffective assistance of counsel at the multiple offender hearing, we find the record does not support these allegations. Initially, we note that Mr. Spell filed an answer to the multiple offender bill of information which stated, "All allegations contained in the State's Multiple Offender Bill of Information Filed as to Count One are denied." Moreover, concerning defense counsel's failure to cross-examine the fingerprint expert, the defendant does not explain how or why the failure to cross-examine this expert witness constituted deficient performance by defense counsel or prejudiced the defendant in any way. Accordingly, the defendant's claim of ineffective assistance of counsel at the multiple offender hearing has no merit.

Right to Self-Representation
An accused has the right to choose between the right to counsel, guaranteed in the state and federal constitutions, and the right to self-representation. However, the choice to represent oneself must be clear and unequivocal. Requests which vacillate between self-representation and representation by counsel are equivocal. Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on a case-by-case basis, considering the facts and circumstances of each. Leger, XXXX-XXXX at p. 53, 936 So.2d at 147-48.
In the instant matter, the defendant, for the first time, requested to represent himself on the first day of trial. Prior to trial, the defendant engaged in dilatory tactics by filing dozens of various pro se motions, including motions to continue, and refusing to communicate with his appointed counsel.[6] The defendant also filed pro se motions to recuse the assistant district attorney and Judge Martin Coady, the trial judge in the instant matter. The motion to recuse Judge Coady had been set for hearing with Judge Elaine DiMiceli on December 1, 2006. On December 14, 2006, Judge DiMiceli denied the motion. The defendant then filed a pro se motion to recuse Judge DiMiceli on December 27,2006.[7]
At no time prior to the beginning of trial did the defendant request, either orally or in writing, to represent himself. In fact, the record indicates the defendant insisted on being represented by counsel. The defendant was represented by two other appointed defense counsels before being represented by Mr. Spell, who represented the defendant on a pro bono basis. When the defendant came into conflict with his appointed counsel, he filed several motions to appoint conflict-free or effective counsel.
On July 28, 2005, Judge Hedges presided over the initial hearing to address the Judge Coady recusal issue. Despite Mr. Fleming having been appointed to represent the defendant, the defendant, already in conflict with Mr. Fleming, indicated to the court that he had no attorney and was not proceeding without one:
By the Court:
Now, Mr. Lay, you've got a lot of motions here to go through. I only want to hear the most important ones first. So what's your most important motion?
By Mr. Lay:
First of all, I want to know who is my attorney? Because I'm not going through no procedure here without my attorney. I'm not waiving my right to counsel.
By the Court:
Wait, Mr. Lay.
By Mr. Lay:
Are you trying to make me represent myself pro se?
By the Court:
No. No....
At a January 19, 2007 hearing, just two months prior to trial, Mr. Spell reurged his motion to withdraw as counsel because of conflicts with the defendant. In denying the motion, the trial court stated:
Well, Mr. Lay, we had colloquy last time that included his right to represent himself and waive counsel. And I also invited him to have counsel of his choice. And he chose not to represent himself nor to have other counsel. But he did want counsel. He has had other counsel prior. First the Public Defender's Office, who he sued. They were disqualified. And then there was other private counsel, who he asked to be removed. They were removed. Mr. Spell, whom he asked for, in the proceeding, [sic]
I find that basically it's been a design to delay and frustrate the system. I find that Mr. Spell is a very competent lawyer and understands criminal law and can do a good job for Mr. Lay.
Mr. Lay may not allow him to do it, but that's his decision.
Therefore, I am denying the motion.
On the day of trial, when the defendant informed the trial court that he wanted to represent himself, the trial court reiterated that he had spoken with the defendant about this issue, "He advised me earlier, and I went through a colloquy and then Mr. Lay told me quite clearly that he didn't want to represent himself." Nevertheless, the trial court conducted a thorough Faretta hearing to determine whether the defendant could make a knowing and intelligent waiver of his right to counsel before being allowed to represent himself. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). After some extended non-responsive answers by the defendant, the hearing concluded as follows:
The Court:
You interrupted me again. That's not quite responsive to what I'm saying, what I'm asking. You understand, sir, that self representation almost always is unwise 
Mr. Lay:
Yes, it said in Faretta v. California.
The Court:
 unless you make a well-conducted defense that would ultimately be to your own detriment.
Mr. Lay:
That's a possibility if you don't know what you want to do and where you want to take it. I'm the only one know what's in store. It's as I say, you must have an ace in the hole. And I got one. I got an ace in the hole; gonna shock the whole world and I'll slay Goliath over there. David will slay Goliath by representing himself, `cause I got truth to my side; he has nothing but lies. See, it's personal. It's not justice that we seek today, it's personal. Richard Lay of the past, a thorn in the State's side. Let's get rid of Richard Lay. This is what it's all about. It's not about justice. If it was about justice, Richard Lay would have got the same thing his white co-defendant got, whose record is equivalent to his. Richard Lay would have got probation like everyone else got. But Richard Lay is going to trial, they would not offer a plea. And they seek  what'd they say?  a quad bill with a substantial amount of years. Why? When Richard Lay was willing to plead guilty just for namesake and get rid of everything. Why single him out? It's personal. Personal has no place in justice.
The Court:
Well, your ace in the hole, you can talk to your attorney about it. I believe you need the assistance of counsel. I think it's in your interest. I think with assistance you certainly can help your attorney in this defense. That's my ruling. I note your objection.
We find no error in the trial court's ruling. The record indicates that rather than making a knowing and intelligent waiver of his right to counsel, the defendant chose instead to continue his dilatory tactics. The defendant's request to represent himself appeared to be more of an attempt to continue to manipulate the system rather than a genuine desire to waive his right to counsel. At trial, prior to voir dire, the trial court also conducted the preliminary examination. The State's only witness for the preliminary examination was Detective Nicholas Powe. Defense counsel did not cross-examine Detective Powe. Ostensibly based on defense counsel's decision not to cross-examine the witness, this was the first time the defendant asked to represent himself:
At this time, Your Honor, I'm asking the Court if the Court is not going to allow me to cross-examine Detective Powe to perfect the record, I ask that you  this man asked to withdraw off the case. I'm very capable and willing to proceed with this matter on my own. This is what the Court wants anyway. So therefore I'm asking you to get rid of him because he's not being beneficial to me, as the Court has saw again, this man is unprepared to proceed in this matter of cross-examination, which is crucial. We had a preliminary examination to establish probable cause and he's not prepared to cross-examine the only State's witness.
The record shows that the defendant's request to represent himself was not an unequivocal one; rather, it was an obfuscated request to substitute appointed counsel because of his disagreement with current counsel's choice of trial strategy. See State v. Bridgewater, XXXX-XXXX, p. 19 (La. 1/15/02), 823 So.2d 877, 895, cert, denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003). In quoting a federal court addressing a similar request, the Bridgewater court stated:
A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel. The circumstances surrounding [the defendant's] purported waiver of his right to counsel and the assertion of his right to proceed without counsel in this case suggest more a manipulation of the system than an unequivocal desire to invoke his right of self-representation.
Bridgewater, XXXX-XXXX at p. 19, 823 So.2d at 895.
Similarly in the instant matter, based on the record, we find that the defendant's request for self-representation was an attempt to manipulate the court system, rather than a sincere desire to dispense with counsel. See Leger, XXXX-XXXX at p. 57, 936 So.2d at 150. See also State v. Hegwood, 345 So.2d 1179, 1181-82 (La. 1977). Accordingly, the trial court did not err in denying the defendant the right to represent himself.
These counseled assignments of error are without merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER 3
In his third counseled assignment of error, the defendant argues the trial court erred in finding him a fourth felony habitual offender. Specifically, the defendant contends that the evidence introduced by the State for two prior felonies was not sufficient to prove that he was the same person convicted of those two felonies.
In order to obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. In attempting to do so, the State may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical driver's license number, sex, race, and date of birth. State v. Payton, 2000-2899, p. 6 (La. 3/15/02), 810 So.2d 1127, 1130.
Of the three prior felonies introduced by the State at the multiple offender hearing, the defendant challenges the following two felonies: possession of stolen property valued between $100 and $500 on February 19, 1991, in St. Tammany Parish (Docket No. 197086); and possession of cocaine within 1,000 feet of school property on December 3, 1992, in St. Tammany Parish (Docket No. 215530). Regarding the possession of stolen property conviction, the defendant asserts his identity was not proven because the bill of information containing his fingerprints was not the same bill of information on which his trial was based, which did not contain fingerprints.
State's Exhibit No. 5 is comprised of extracts of the minute entries for the possession of stolen property conviction (Docket No. 197086). The minutes indicate that the State severed charges in the matter and filed a new bill of information, which listed Count 2 only. The minutes also indicate that the jury found the defendant guilty of the charge. State's Exhibit No. 4 contains both the original and amended bills of information. The original bill of information charged the defendant with theft (Count 1) and possession of stolen property (Count 2). The defendant's fingerprints are on the back of this bill of information. The amended bill of information charged the defendant only with possession of stolen property (Count 2 in the original bill of information). This amended bill of information does not contain the defendant's fingerprints.
The defendant contends that, because the amended bill of information does not contain his fingerprints, his identity was not proven. We disagree. Deputy Tommy Morse, a fingerprint expert, testified at the multiple offender hearing. Deputy Morse testified that on the day of the hearing he made a fingerprint card of the defendant. The defendant's fingerprint card was submitted into evidence as State's Exhibit No. 2. Deputy Morse examined the fingerprints on the bill of information charging the defendant with theft and possession of stolen property (Docket No. 197086), and determined that they matched those prints on the defendant's fingerprint card. We do not find that the lack of fingerprints on the amended bill of information is fatal to proof of the identity of the defendant. The defendant's fingerprints are contained on the original bill of information. The amended bill of information is clearly for the same charge against the same person for possession of stolen property. Both the original bill and amended bill state that Richard Lay, "B/M 01-02-59," violated LSA-R.S. 14:69 "by possessing property valued between $100 and $500 which had been the subject of a theft from Felix Terrill, under circumstances which indicated said defendant knew or had good reason to believe the property was stolen." We find the evidence sufficient to prove that the defendant at the multiple offender hearing was the same person as the defendant convicted of possession of stolen property on February 19, 1991, in St. Tammany Parish.
The defendant also asserts that the trial court erred when it erroneously found that the defendant was the "same person convicted in the proceeding 197086 of the Twenty-Second Judicial District Court, theft over $500." Apparently, the trial court was referring to the original bill of information, which contained the charge of theft of property valued over $500 (Count 1). The trial court made its finding regarding Count 1 instead of Count 2, the possession of stolen property charge. However, the trial court's misstatement of the offense at issue in no way affects the evidence provided by the State, which proved the prior felony of possession of stolen property and that the defendant is the same person convicted of that felony. While the trial court misspoke, we find such error harmless beyond a reasonable doubt. LSA-C.Cr.P. art. 921.
Regarding the possession of cocaine within 1,000 feet of school property conviction, the defendant asserts his identity was not proven because the bill of information has no fingerprints to compare to the defendant's fingerprint card produced at the multiple offender hearing. State's Exhibit No. 3 is a Department of Corrections "pen pack" for the defendant's possession of cocaine within 1,000 feet of school property conviction (Docket No. 215530). The "pen pack" contains the defendant's discharge date, Department of Public Safety and Corrections Services Master Record, release date computation information, the Uniform Commitment Document, the bill of information, extracts of minute entries, a Louisiana State Police Investigative Report, a fingerprint card, and a photograph of the defendant.
At the multiple offender hearing, Deputy Morse testified that the prints on the fingerprint card in the "pen pack" matched those prints on the defendant's fingerprint card (State's Exhibit No. 2). While there are no fingerprints on the back of the bill of information charging the defendant with distributing cocaine within 1,000 feet of school property,[8] the fingerprint card contained in the "pen pack" sufficiently corresponds with the bill of information. The fingerprint card lists the defendant's name, social security number, date of birth, sex, race, height, and weight. It also lists the State Identification Number, "DOC # 110315." The discharge form (at the front of the "pen pack") lists the DOC number as "110315," the crime as "possession of cocaine," and the docket number as "215530." The bill of information contains the defendant's name, his date of birth, and the docket number 215530. Thus, while the fingerprint card in the "pen pack" does not contain the docket number (215530), it contains the DOC number 110315, and the defendant's discharge form for DOC number 110315 references the docket number 215530.
Although we find the State proved the defendant's identity through fingerprint evidence, we note that fingerprints are not the only form of proof for identification. Our supreme court has found that the State may prove prior convictions by any competent evidence, and that fingerprint evidence is not always necessary to establish such proof See Payton, 2000-2899 at pp. 8-9, 810 So.2d at 1132. The "pen pack" also contained a photograph of the defendant, which lists the defendant's physical characteristics, his date of birth, and the DOC number 110315. This DOC number matches the DOC number on the defendant's discharge form, and the name and date of birth matches the name and date of birth on the bill of information. The defendant notes that the photograph lists the parish of conviction as St. Mary, instead of St. Tammany, where the possession of cocaine occurred. This appears to be a clerical error by the Louisiana State Penitentiary. Despite this error, we find the evidence sufficient to prove that the defendant at the multiple offender hearing was the same person as the defendant convicted of possession of cocaine within 1,000 feet of school property on December 3, 1992, in St. Tammany Parish.
Through testimony and exhibits, the State presented competent evidence to prove the defendant's identity and that he was the same person convicted of the prior felony offenses. Accordingly, this counseled assignment of error is without merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER 4
In his fourth counseled assignment of error, the defendant argues that he was denied effective assistance of counsel. Specifically, the defendant contends that defense counsel was ineffective for failing to object to the trial court's instruction regarding general criminal intent.
To prove attempted possession of cocaine, a finding of specific intent to commit the offense is required. See LSA-R.S. 14:27(A). The trial court instructed the jury on both general criminal intent and specific criminal intent. The defendant contends that the additional instruction on general criminal intent could have contributed to the guilty verdict. Therefore, defense counsel was ineffective for failing to object to this jury instruction.
Though the trial court recited to the jury the definitions of both types of criminal intent, it specifically informed the jury that the defendant was charged with attempted possession of cocaine, and that a person is guilty of an attempt to commit the offense intended when he has specific intent to commit a crime and does or omits an act for the purpose of and tending directly toward the accomplishing of his object. The trial court further stated:
Thus, in order to convict the defendant of attempted possession of cocaine, you must find that:
1) the defendant had the specific intent to commit the crime of possession of cocaine; and
2) the defendant did or omitted an act for the purpose of and tending directly toward the commission of the crime of possession of cocaine.
(Emphasis added.)
The trial court erred in giving the jury instruction on general criminal intent. However, given the evidence of this case, we do not find that the inclusion of that definition in the general charge could have created such confusion in the minds of the jury as to mandate reversal. See State v. Anderson, 343 So.2d 135, 142 (La. 1977) (on rehearing). When taken in the context of the instructions as a whole, reasonable persons would understand the charge. See State v. West, 568 So.2d 1019, 1023 (La. 1990). The trial court made it clear that in order to convict the defendant, the jury was required to find specific intent. We find that any error on the part of the trial court in including the instruction on general intent was harmless because the guilty verdict was surely unattributable to such error. See LSA-C.Cr.P. art. 921; Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). Even assuming deficient performance for failure to object to the trial court's instruction, the defendant was not prejudiced by the error. Accordingly, under Strickland, defense counsel was not ineffective for failing to object to the jury instruction.
This counseled assignment of error is without merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER 5
In his fifth counseled assignment of error, the defendant argues that the trial court erred in not granting the motion for post-verdict judgment of acquittal when there was insufficient evidence to support the conviction. Specifically, the defendant contends that because of the specific language of the offense charged in the bill of information, the evidence was insufficient to prove he committed the offense.
The defendant concedes that an individual may be convicted of attempted possession of cocaine without the presence of any cocaine. See State v. Harris, XXXX-XXXX (La. 5/20/03), 846 So.2d 709. The particular contention by the defendant is that the crime charged in the bill of information suggests that he was in actual possession of cocaine. Count 1 of the bill of information states, "R.S. 40:27:967C [sic] ATTEMPTED POSSESSION OF A SCHEDULE II CONTROLLED DANGEROUS SUBSTANCE, by having in possession, a Schedule II controlled dangerous substance, to-wit: COCAINE." The defendant notes that the charge, as quoted above, was read to the jury at the start of trial, and that this caused confusion for the jury and misunderstanding for the defendant since no actual cocaine was involved in the case.
A defendant has a constitutional right to be advised, in a criminal prosecution, of the nature and cause of the accusations against him. LSA-Const. art. I, § 13. Louisiana Code of Criminal Procedure article 464 provides in pertinent part, "The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The bill of information must contain all the elements of the crime intended to be charged in sufficient particularity to allow the defendant to prepare for trial, to enable the court to determine the propriety of the evidence that is submitted upon the trial, to impose the appropriate penalty on a guilty verdict, and to protect the defendant from double jeopardy. State v. Templet, 2005-2623, p. 12 (La. App. 1 Cir. 8/16/06), 943 So.2d 412, 420, writ denied, 2006-2203 (La. 4/20/07), 954 So.2d 158.
A defendant may not complain of technical insufficiency in a bill of information for the first time after conviction, when the indictment fairly informed the accused of the charge against him and the defendant is not prejudiced by the defect.[9] After the verdict, a defendant ordinarily cannot complain of the insufficiency of a bill of information unless it is so defective that it does not set forth an identifiable offense against the laws of this State and inform the defendant of the statutory basis of the offense. See Templet, 2005-2623 at pp. 12-13, 943 So.2d at 420. Omission of the essential facts from a bill of information is not necessarily prejudicial error because such facts can be given through responses in a bill of particulars. State v. Authement, 532 So.2d 869, 873 (La. App. 1 Cir. 1988).
Notwithstanding that the bill of information may be technically incorrect in suggesting possession of actual cocaine, a review of the record indicates that the defendant was fairly informed of the charge against him and that he has not been prejudiced by surprise or lack of notice. See State v. James, 305 So.2d 514, 516-20 (La. 1974); State v. Barclay, 591 So.2d 1178, 1181-82 (La. App. 1 Cir. 1991), writ denied, 595 So.2d 653 (La. 1992). Well before trial, the defendant was aware that the State intended to prove that an undercover officer sold the defendant facsimile crack cocaine. In the State's discovery provided to the defendant, several documents indicated that facsimile rock cocaine was used in the transaction. In one of his pro se motions to quash, the defendant stated that the undercover officer was in possession of "peanuts." In another pro se motion to quash, the defendant stated that the undercover officer had "facsimile rocks of cocaine." In the preliminary examination, Detective Powe testified that macadamia nuts were used to represent the crack cocaine in the transactions.
Similarly, the jury was not misled by surprise or lack of notice. In his opening statement, the prosecutor told the jury that the undercover officer was supplied with fake crack cocaine. He further stated, "The police carved up pieces of macadamia nuts, so that if somebody got away with it and they weren't able to catch them, they weren't getting away with illegal dope." During trial, Deputy Washington testified that he was provided with fake crack cocaine. Also during trial, Detective Powe testified that he retrieved the fake crack cocaine that had been supplied to the defendant.
The record indicates that the defendant was well aware of the allegation against him and was in no way prejudiced by the fact that the bill of information included the additional" by having in possession" language. See State v. Galindo, XXXX-XXXX, p. 13 (La. App. 4 Cir. 10/3/07), 968 So.2d 1102, 1112, writ denied, 2007-2145 (La. 3/24/08), 977 So. 2d 952.
We next address the sufficiency of the evidence. A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV; LSA-Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821(B); State v. Ordodi, XXXX-XXXX, p. 10 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585, pp. 4-5 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfmder's determination of guilt State v. Taylor, 97-2261, pp. 5-6 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932.
Attempted possession of cocaine is a specific intent crime. See LSA-R.S. 14:27(A); State v. Sylvia, XXXX-XXXX, pp. 8-9 n.l (La. 4/9/03), 845 So.2d358, 364 n.l. Specific intent is a state of mind. It need not be proven as a fact and may be inferred from the circumstances present and the actions of the defendant. State v. Hamilton, XXXX-XXXX, p. 11 (La. App. 1 Cir. 2/14/03), 845 So.2d 383, 392, writ denied, XXXX-XXXX (La. 4/30/04), 872 So.2d 480.
The purchase of a noncontrolled substance that the defendant subjectively believes to be a controlled substance can constitute an attempt to possess. The defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent to purchase or sell actual narcotics. See Harris, XXXX-XXXX at pp. 6-7, 846 So.2d at 714 (relying in part on federal authority, United States v. Pennell, 737 F.2d 521 (6th Cir. 1984), cert, denied. 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985), and United States v. Everett, 700 F.2d 900, 908 (3rd Cir. 1983) (which found untenable the impossibility defense)).
Deputy Washington testified at trial that, while in his undercover capacity as a drug dealer, the defendant, with $50 in cash on his person, took possession of five rocks of facsimile crack cocaine. The defendant gave four of the rocks back to Deputy Washington and kept one in his possession, which he indicated he wanted to try to smoke. Deputy Washington asked the defendant if he had a pipe. The defendant informed Deputy Washington that he did not use a pipe to smoke crack. The defendant then pulled out rolling papers and informed Deputy Washington that he was going to smoke the rock in the paper. The defendant was arrested prior to rolling the rock.
The transaction was videotaped and audiotaped. The defendant can be seen in the videotape in possession of the rocks. The defendant can be heard on the audiotape saying, "Let me test it. I got the money." Also heard on the audiotape is Deputy Washington asking, "You smoke that shit in paper?" and the defendant responding, "Yeah." On cross-examination, the defendant testified at trial that he never had the five rocks, and that he was not going to buy a rock from Deputy Washington.
In finding the defendant guilty, it is clear that the jury rejected the defendant's testimony and found that Deputy Washington's testimony, along with video and audio recordings corroborating that the defendant took possession of the facsimile crack cocaine, established the defendant's guilt. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1 Cir. 1985). We are constitutionally precluded from acting as a" thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So.2d 78, 83.
After a thorough review of the record, we find that the evidence supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of attempted possession of cocaine.
This counseled assignment of error is without merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER 6
In his sixth counseled assignment of error, the defendant argues that his sentence was excessive. Specifically, the defendant contends that, while his twenty-year sentence is the statutory minimum for a fourth felony habitual offender, a downward departure from this sentence would not be inappropriate in this case.
The Eighth Amendment to the United States Constitution and Article I, section 20, of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. State v. Andrews, 94-0842, pp. 8-9 (La. App. 1 Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See State v. Holts, 525 So.2d 1241, 1245 (La. App. 1 Cir. 1988). On appellate review of a sentence, the relevant question is `"whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate."' State v. Thomas, 98-1144, pp. 1-2 (La. 10/9/98), 719 So.2d 49, 50 (per curiam) (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)).
The defendant in the instant matter was adjudicated a fourth felony habitual offender. Pursuant to LSA-R.S. 15:529.1(A)(l)(c)(i), the trial court imposed the minimum sentence of twenty years.[10] The defendant objected to the sentence as being excessive and made an oral motion to reconsider sentence. The motion was denied.
In State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993), the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive.
In State v. Johnson, 97-1906, pp. 7-9 (La. 3/4/98), 709 So.2d 672, 676-77, the Louisiana Supreme Court reexamined the issue of when Dorthey permits a downward departure from the mandatory minimum sentences under the Habitual Offender Law.
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. Johnson, 97-1906 at p. 7, 709 So.2d at 676.
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Given the legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates the constitution. Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. Johnson, 97-1906 at pp. 8-9, 709 So.2d at 676-77.
The defendant contends that a downward departure is appropriate in this case because none of the defendant's prior convictions were for crimes of violence. However, this factor of non-violent prior offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders. See Johnson, 97-1906 at p. 7, 709 So.2d at 676. The defendant also notes that the instant offense carried a maximum sentence of only two and one-half years. According to the defendant, the twenty-year sentence is excessive "when compared to the relatively low gravity of the offense committed." However, the defendant is not being sentenced to twenty years for the instant "low gravity" offense. Rather, under the Habitual Offender Law, the defendant, a recidivist with multiple felony convictions, is being punished for the instant crime in light of his continuing disregard for the laws of our State. See Johnson, 97-1906 at p. 8, 709 So.2d at 676-77. Furthermore, in sentencing the defendant, the trial court found that beyond the four felonies, which accounted for his adjudication as a fourth felony habitual offender, the defendant had "more extensive criminal history."
There is nothing particularly unusual about the defendant's circumstances that would justify a downward departure from the twenty-year sentence imposed under LSA-R.S. 15:529.1. The defendant has not proven by clear and convincing evidence that he is exceptional such that a twenty-year sentence would not be meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. See Johnson, 97-1906 at p. 8, 709 So.2d at 676. The sentence is not unconstitutionally excessive. Accordingly, the trial court did not err in denying the motion to reconsider sentence.
This counseled assignment of error is without merit.

PRO SE ASSIGNMENTS OF ERROR NUMBERS 1 AND 2
In his first pro se assignment of error, the defendant argues that the bill of information violated his right to due process because it charged him with the attempted possession of actual cocaine instead of facsimile cocaine. In his second pro se assignment of error, the defendant argues that the evidence to convict him was insufficient because the State did not prove that he knowingly or intentionally attempted to possess cocaine.
These arguments, addressed in the fifth counseled assignment of error, have already been found to be without merit.

PRO SE ASSIGNMENTS OF ERROR NUMBERS 3 AND 4
In his third and fourth pro se assignments of error, the defendant argues that enhancement of his sentence pursuant to LSA-R.S. 15:529.1 constitutes double jeopardy and violates due process. Specifically, the defendant contends that since he completed serving his sentence for the instant conviction (attempted possession of cocaine), the State could not institute habitual offender proceedings to enhance the instant conviction.
The defendant was adjudicated a fourth felony habitual offender on May 31, 2007. Because he was eligible for diminution of sentence for the instant conviction, the defendant was released from the Department of Public Safety and Corrections on May 25, 2007, six days prior to the multiple offender hearing and the defendant's adjudication as a fourth felony habitual offender. According to the defendant, since completion of a sentence ordinarily creates a legitimate expectation of finality, the State was precluded from enhancing a sentence after the sentence was already served in full.
The State filed a multiple offender bill of information on March 30, 2007, the day after the defendant was found guilty of the instant offense, and over two weeks before the defendant was sentenced on April 16, 2007, to two and one-half years for the instant offense. Thus, even before he was sentenced, the defendant knew the State intended to charge him as a multiple offender. More importantly, our supreme court in State v. Muhammad, 2003-2991, p. 17 (La. 5/25/04), 875 So.2d 45, 56, held that there is no bright-line deadline by which the habitual offender proceeding must be completed. Thus, despite that he was not adjudicated as a multiple offender until six days after his full sentence completion date, the defendant's due process rights were not violated. See Muhammad, 2003-2991 at pp. 13-17, 875 So.2d at 54-56.
The defendant's double jeopardy argument is also baseless. The Habitual Offender Law creates no independent offense, but rather prescribes the conditions under which there is an enhanced penalty for the current offense. For this reason, considerations of double jeopardy simply do not apply. State v. Boykin, 34,133, p. 2 (La. App. 2 Cir. 12/6/00), 774 So.2d 1074, 1075. See also Dorthey, 623 So.2d at 1279 (explaining that because the multiple offender hearing is not a trial, legal principles such as double jeopardy do not apply).
These pro se assignments of error are without merit.

PRO SE ASSIGNMENTS OF ERROR NUMBERS 5 AND 6
In his fifth and sixth pro se assignments of error, the defendant argues that the disparate treatment by the State violated his rights to due process and equal protection. Specifically, the defendant (who is black) contends that he was adjudicated a habitual offender, whereas his white codefendant, who was exposed to being adjudicated a fourth felony habitual offender, was placed on probation. He further contends that more than twenty other people were also arrested at the arrest scene in this case, yet those people were allowed to plead guilty and were placed on probation,
There is simply nothing in the record to support these contentions. The record contains no pertinent information about a codefendant or other arrestees for this court to even consider a claim of disparate prosecutorial treatment. Accordingly, these pro se assignments of error are without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 7
In his seventh pro se assignment of error, the defendant argues that he received ineffective assistance of counsel. Specifically, the defendant alleges twenty-six instances of ineffective assistance of counsel.
Several of the claims include defense counsel's failure to request appointment of expert witnesses, failure to pursue the defendant's defenses without investigating witnesses, failure to exclude the videotape and audiotape of the transaction, and failure to object to instances of prejudicial hearsay, such as why the officers began their investigation and how many arrests were made.
As we noted in the first counseled assignment of error, a claim of ineffective assistance of counsel is more properly raised by an application for postconviction relief in the district court, where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. Carter, 96-0337 at p. 10, 684 So.2d at 438.
In the instant matter, the allegations of ineffective assistance of counsel cannot be sufficiently investigated from an inspection of the record alone. Decisions relating to investigation, preparation, and strategy cannot possibly be reviewed on appeal. Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond what is contained in the instant record, could these allegations be sufficiently investigated.[11] Accordingly, these allegations are not subject to appellate review. See Albert, 96-1991 at p. 11, 697 So.2d at 1363-64.
This pro se assignment of error is without merit.

PRO SE ASSIGNMENTS OF ERROR NUMBERS 8 AND 11
In his eighth and eleventh pro se assignments of error, the defendant argues that he was entitled to conflict-free counsel. He further argues that he was entitled to waive his right to counsel and represent himself.
These arguments, addressed in the first and second counseled assignments of error, have already been found to be without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 9
In his ninth pro se assignment of error, the defendant argues that his due process rights were violated. Specifically, the defendant contends that he was deprived of a fair and impartial multiple offender hearing.
Prior to the multiple offender hearing held on May 31, 2007, the defendant filed on April 20 and April 26, 2007, pro se motions in opposition to the multiple offender bill of information. The defendant asserts that he was denied due process because the State did not respond to his opposition, and his pro se requests for subpoenas of witnesses to support his opposition were not issued. These assertions are baseless.
In the "Judgment With Reasons"[12] denying the defendant's pro se motions to recuse Judge Coady, Judge DiMiceli stated "the defendant is not to file any documents pro se." In ordering the denial of the motions to recuse, she further ordered that "the defendant is to file no further pro se pleadings, but is to present pleadings to his attorney[.]" On January 19, 2007, Judge Coady filed a Judgment With Reasons, wherein he ruled on sixty-six pro se motions filed by the defendant. Again, the defendant was prohibited from filing pro se motions: "Because of the defendant's abuse of the judicial system as demonstrated by the voluminous number of motions as set forth above, and the fact that he is represented by competent counsel, the Court is prohibiting defendant from filing any further pro se motions."
At the multiple offender hearing, when the defendant informed the trial court that the State did not respond to his opposition and that his subpoenas were not issued, the prosecutor responded that there had been no service on him of any document. The prosecutor further reminded the trial court that it was his understanding that the court had specifically ruled that all pleadings filed by the defendant would be filed through his attorney of record. Mr. Spell was still the defendant's attorney of record at this time. The trial court informed the defendant that the subpoenas should have been issued through his attorney. Thus, there were no rulings by the trial court on the defendant's pro se motions because they were neither properly before the trial court nor adopted by his defense counsel. Accordingly, the issues have not been preserved for appellate review. See State v. Dudley, XXXX-XXXX, p. 32 (La. App. 1 Cir. 9/19/07), ___ So.2d ___, ___.
This pro se assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 10
In his tenth pro se assignment of error, the defendant argues that he will be subjected to ineffective assistance of counsel if he does not perfect and argue these obvious issues in the record.
The defendant's appellate counsel filed a brief alleging several assignments of error. In his pro se brief, the defendant has supplemented counseled assignments of error with additional assignments of error. All assignments of error, both counseled and pro se, have been addressed by this court. Accordingly, the defendant has failed to raise any cognizable claim for this court to address.
This pro se assignment is without merit.

COUNSELED AND PRO SE REPLY BRIEFS
The issues raised in the counseled reply brief have already been addressed in the counseled assignments of error discussed above. Except for two issues, all other issues raised in the pro se reply brief have already been addressed in the counseled assignments of error and the pro se assignments of error discussed above.
The first new argument raised in the defendant's pro se reply brief is that he would not have testified at trial if defense counsel had informed him that the State could use his prior convictions as conclusive proof of prior convictions for purposes of adjudication as a habitual felony offender under LSA-R.S. 15:529.1. This assertion is baseless. The defendant's admissions to other crimes at trial were not used to prove his prior convictions at the habitual offender hearing. The State proved the defendant's prior convictions through the testimony of a fingerprint expert and the submission into evidence of documentary evidence, including a pen pack, bills of information, and minute entries, which established the defendant's prior convictions.
The second new argument raised in the defendant's pro se reply brief is that he has not reviewed the entire record because appellate counsel has not provided it to him and defense counsel has not turned over his file to appellate counsel or to the defendant. These allegations are not supported by the record. Furthermore, to the extent the defendant is complaining about the record being incomplete, he makes no attempt to indicate specifically what is missing. We also note that appellate counsel has made no such complaint about the appellate record being incomplete. Accordingly, this argument is not subject to review on appeal.

PRO SE AMENDED ARGUMENTS
In his amended argument, the defendant asserts that he cannot be guilty of attempted possession of cocaine because the legislature has not made it a crime to possess an imitation controlled dangerous substance.[13] See LSA-R.S. 40:967(C), which proscribes simple possession of a controlled dangerous substance only. This argument has no merit.
The defendant was charged with attempted possession of cocaine. That the "drug" possessed was "sham" crack cocaine or an imitation controlled dangerous substance is irrelevant. See Harris, XXXX-XXXX at pp. 5-9, 846 So.2d at 713-15; Pennell, 737 F.2d 521; Everett, 700 F.2d at 908.[14] The gravamen of the instant crime is the attempt to possess a controlled dangerous substance, not the actual possession of an imitation controlled dangerous substance. The overt act need not be the ultimate step toward or the last possible act in the consummation of the crime attempted. It is the intent to commit the crime, not the possibility of success, that determines whether the act or omission constitutes the crime of attempt. State v. Smith, 94-3116, p. 3 (La. 10/16/95), 661 So.2d 442, 444. See also State v. Hollis, 96-738 (La. App. 5 Cir. 1/28/97), 688 So.2d 108. Thus, while, as the defendant notes, it is not a crime to possess an imitation controlled dangerous substance under LSA-R.S. 40:967(C),[15] under LSA-R.S. 40:967(C), LSA-R.S. 14:27, and the jurisprudence, it is a crime to attempt to possess what is believed to be a controlled dangerous substance, whether the object attempted to be possessed is a controlled dangerous substance or an imitation controlled dangerous substance.
Accordingly, this argument is without merit.
The defendant also asserts in separate amended arguments that this sentence was excessive and that, relative to other defendants related to this case, he received disparate treatment by the State. These issues, addressed in the sixth counseled assignment of error and the fifth and sixth pro se assignments of error, have already been found to be without merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.
NOTES
[1] Deputy Washington and the defendant knew each other from growing up together around the same area.
[2] Mr. Spell filed a motion to enroll as the defendant's counsel on November 28, 2005, and the motion was signed December 7, 2005.
[3] For example, on the day before trial, Mr. Spell informed the trial court that he tried to speak with the defendant about the case, but the defendant refused to talk with him. The defendant responded that there was more discovery to be obtained, that Mr. Spell had not interviewed anyone involved in the arrest, and that defense counsel was "trying to force his own personal views of what type of defense and strategy" the defendant wanted to present in the case. Mr. Spell explained to the trial court that the defendant wanted to institute an entrapment defense, but that the facts of the case preclude entrapment as a viable defense. According to Mr. Spell, to find and interview everyone that was arrested that day post-Katrina would be impossible. Mr. Spell added:

I don't have time, and I wouldn't with a paid client go interview everyone that was arrested on that day to institute an entrapment defense for a client with the rap sheet this gentleman has. It's a waste of time, a waste of effort. And it would be a waste of the Court's time. There is no entrapment defense. And that is the issue.
I have other defenses that I don't want to reveal to the State at this time, which have been rejected out of hand by Mr. Lay, who does not want legal advice, does not want legal counsel. Anyone that talks to Mr. Lay gets sued. Anyone who tries to help Mr. Lay gets sued. So my hands are tied. But I'm not going to go on some wild goose chase on some weak defense, when I have other defenses he won't consider, or even listen to for that matter, Your Honor.
[4] The defendant read aloud part of one of the letters he sent to Mr. Spell, as follows: "I thought you were different, but you ain't shit. You ain't worthy to touch my jockey strap." The other letter sent to Mr. Spell by the defendant, which was read aloud in its entirety (notwithstanding the misreading of a few words), stated:

Dear Asshole
You and your conspirators [Gardner/Coady] knows of Lav v. Spell # 2006-16232-A which caused Judge Childress to file a motion to recuse himself on 12-21-07 in State v. Lay # 215530 and thru notice of objections mailed 1-11-07 in # 383759-F. You three got the right game but wrong Negro to blame it on. You see if you three railroad me and my family and 1 suffer so will yours be subjected to an [sic] just punishment
Later Asshole
[5] The defendant would have to satisfy the requirements of LSA-C.Cr.P. art. 924, et seq., in order to receive such a hearing.
[6] After ruling on sixty-six pro se motions or pleadings filed by the defendant, Judge Coady prohibited the defendant from filing any further pro se motions because of the defendant's abuse of the judicial system.
[7] On January 19, 2007, Judge Coady denied the pro se motion to recuse Judge DiMiceli because the matter was moot. Judge Coady ruled that Judge DiMiceli was not the judge in the instant matter and, further, at the time the defendant's pro se motion was filed, Judge DiMiceli had already denied the motion to recuse Judge Coady.
[8] Though the bill of information charged the defendant with distributing cocaine within 1,000 feet of school property, the jury convicted the defendant of possession of cocaine within 1,000 feet of school property.
[9] The defendant filed several pro se motions to quash. None of these motions raised the precise issue addressed in this assignment of error.
[10] The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life. LSA-R.S. 15:529.1(A)(lXc)(i).
[11] The defendant would have to satisfy the requirements of LSA-C.Cr.P. art. 924, et seq., in order to receive such a hearing,
[12] Judge DiMiceli's judgment was filed December 14, 2006.
[13] The defendant states in his brief that, under LSA-R.S. 40:967(A)(2), it is a crime to possess with intent to distribute an imitation controlled dangerous substance. However, LSA-R.S. 40:967(A)(2) actually proscribes the possession with intent to distribute a counterfeit controlled dangerous substance. A counterfeit controlled dangerous substance is still a controlled dangerous substance. See LSA-R.S. 40:961(9). An imitation controlled dangerous substance is a noncontrolled substance which, by appearance or operation, would lead a reasonable person to believe the substance is a controlled dangerous substance. See LSA-R.S. 40:961(20). In any event, the fact that possession with intent to distribute a counterfeit controlled dangerous substance is designated a crime rather than simple possession of an imitation controlled dangerous substance has no bearing on the validity of attempted possession of a controlled dangerous substance, albeit an imitation controlled dangerous substance in actuality, is a recognized crime in this State.
[14] This issue, as applied to a sufficiency of evidence analysis, was addressed in the fifth counseled assignment of error.
[15] See State v. Legaux, 94-1536, p. 4 (La. App. 4 Cir. 6/29/95), 658 So.2d 319, 322, writ denied, 95-1985 (La. 1/5/96), 666 So.2d 299.